**GREEN v. ROBBINS.**
**No. 1048.**

United States District Court
D. Maine, S. D.

March 25, 1954.

As Amended April 9, 1954.

George F. Green, pro se.

James G. Frost, Deputy to Atty. Gen., for Maine, Roger A. Putnam, Asst. to Atty. Gen., for Maine, for respondent.

CLIFFORD, District Judge.

This matter comes before this Court upon the petition of George F. Green in which he alleges that he is at present illegally restrained in the custody of the Warden of the Maine State Prison. Green is now serving a sentence of not less than five and not more than ten years, after having been found guilty of knowingly uttering a forged check by a jury in Lincoln County Superior Court, Wiscasset, Maine, on May 17, 1949.

The application for a writ of habeas corpus is in proper form and contains the allegations required by 28 U.S.C. § 2242. It is also accompanied by an affidavit of poverty as authorized by 28 U.S.C. § 1915, in lieu of the filing fee of $5.00.

This same petitioner has, on a number of prior occasions, filed habeas corpus petitions in the State Courts of Maine, all of which were denied. This is the eighth petition filed by him in the Federal Court, seeking release from his confinement.

One of his petitions, submitted to Honorable Peter Woodbury, Circuit Judge, United States Court of Appeals for the First Circuit, was denied on its merits on June 10, 1953. Green v. State, D.C., 113 F.Supp. 253.

Subsequently, another petition was filed with Honorable Calvert Magruder, Chief Judge, United States Court of Appeal for the First Circuit on July 28, 1953. It was the opinion of Judge Magruder that said petition could be construed to include two additional grounds of relief, not presented to Judge Woodbury; namely, (1) that the judgment of conviction was void because the State did not afford counsel adequate time and opportunity to consult with the accused and prepare his defense; and (2) that after the jury brought in its verdict of guilty, the court proceeded at once to impose sentence upon the prisoner without waiting for the return of his counsel to the courtroom.

The petition, however, was denied because it did not appear from any of the Federal petitions for habeas corpus that either of these two specific grounds of relief had ever been presented to the State Courts. Judge Magruder therefore ruled that Green had not exhausted his remedies available in the State Courts.

On October 14, 1953, Green presented another petition for a writ of habeas corpus to this Court which was denied on October 19, 1953. An application for a certificate of probable cause was denied by Judge Magruder on October 30, 1953. He stated as his reason for the denial that, from an examination of the voluminous papers in the case, he was not satisfied that Green, in any of the successive petitions for habeas corpus

which he addressed to various State Court Judges, ever asserted in a clear-cut and intelligible fashion the two allegations hereinbefore mentioned.

Shortly thereafter, Green presented a petition for a writ of habeas corpus to Associate Justice Tirrell of the Supreme Judicial Court of Maine. Notwithstanding the plain and explicit instructions of Judge Magruder, the two main allegations referred to before were hidden among a number of obviously frivolous and irrelevant allegations. Justice Tirrell entered an order on December 16, 1953, denying Green's petition.

Again Green submitted a petition for a writ of habeas corpus to Judge Magruder on December 21, 1953. The petition was denied on December 30, 1953. But in an accompanying memorandum, Judge Magruder once more very patiently spelled out in explicit terms exactly what Green should allege in filing any further petitions in a Federal Court. The present petition stems from his memorandum opinion, dated December 30, 1953.

Following precisely the instructions of Judge Magruder, Green filed another petition for a writ of habeas corpus, stripped of irrelevancies and containing substantially the same allegations asserted in the present petition, with Justice Tirrell. It was summarily denied, without a hearing, on January 15, 1954.

On January 18, 1954, Green submitted the present petition to Judge Magruder. By his order, leave was granted Green to proceed *in forma pauperis,* and pursuant to the authority of 28 U.S.C. § 2241(b) the said petition was transferred by Judge Magruder to this Court for hearing and determination.

On March 2, 1954, this Court ordered the Warden of the Maine State Prison to make a return, certifying the true cause of the detention of Green. The return and answer of the Warden were filed on March 11, 1954, the date on which hearing was had on said petition.

In his petition, Green alleges: (1) that he was ordered to trial on a three-hour notice and that he did not have adequate time and opportunity to consult with his attorney to prepare his defense; (2) that his attorney was not present when the jury brought in its verdict of Guilty; (3) that the State Court immediately imposed sentence upon him in the absence of his counsel; and (4) that by reason of his poverty he is unable to bear the cost of obtaining a review by the Supreme Judicial Court of Maine of the order of Justice Tirrell, denying his petition for a writ of habeas corpus; and the State of Maine does not afford an alternative procedure for obtaining a review *in forma pauperis.*

In order to avoid any possible misunderstanding, a pre-trial conference was had in the Judge's Chambers shortly before the trial, with all parties in attendance, including Green. The conference was reported and it is made a part of the record of this proceeding. All parties were in full accord that the only issues involved concerned the allegations hereinbefore mentioned.

## I

At the outset of the hearing, the attorneys for the State filed a motion to dismiss the petition filed by Green on the ground that he had not exhausted the remedies available to him in the Courts of the State of Maine.

They assert that Green did not employ the proper procedure in petitioning Justice Tirrell for a writ of habeas corpus; that Green should have filed a petition for a writ of error; and, therefore, this Court should not entertain Green's present petition until he has first proceeded in the State Courts by way of a petition for a writ of error.

The attorneys for the State frankly admit that there is no provision under the State laws for the petitioner to obtain a review of a lower Court judgment without the necessity of furnishing a transcript of the record. They further admit that if a petition for a writ of error were brought before a single Justice and denied, the State would be unable to reach an agreement with Green

for a stipulation of facts to be presented to the Law Court and it would again become necessary for Green to provide a transcript of the record.

In support of their motion to dismiss, the State cited Preston v. Reed, 141 Me. 386, 44 A.2d 685, a decision concerning a civil matter. The case holds that under a writ of error a party may assign errors of fact, though not disclosed by the record, and offer proof of the same provided they do not contradict the record.

 Preston v. Reed, supra, clearly is not in point so far as the instant proceedings are concerned. As held in a criminal case decided subsequent to Preston v. Reed, supra, and not cited by the State, the issues raised by a writ of error must be determined on the record of the proceedings in question. Smith v. State, 145 Me. 313, 75 A.2d 538; see also Welch v. State, 120 Me. 294, 113 A. 737. The allegations or issues raised by Green admittedly do not appear on the record, and they do not concern errors of fact. In the opinion of this Court, therefore, Green proceeded properly in the State Court by bringing a petition for a writ of habeas corpus.

 It is also conceded that the State does not afford any alternative procedure of a review *in forma pauperis*. According to a letter written by Honorable Edward F. Merrill, Chief Justice of the Supreme Judicial Court of Maine, to Green, and which is quoted in an opinion by Judge Peter Woodbury, Green v. State, D.C., 113 F.Supp. 253, 255:

"'At present there is no provision allowing proceedings before the Law Court in forma pauperis. The rules of court relative to the filing of records and briefs apply to all persons alike.'"

Therefore, regardless of the method of review employed by Green he would be effectively barred from obtaining a hearing in the Supreme Judicial Court of Maine because of his status as a pauper. Under such circumstances, the petitioner is assumed to have exhausted his remedies. Buchanan v. O'Brien, 1 Cir., 181 F.2d 601; O'Brien v. Lindsey, 1 Cir., 204 F.2d 359. Motion to dismiss is therefore denied.

## II

To support his first allegation of lack of time in which to prepare a defense, Green offered himself as a witness and produced three letters, two of which were from State Police officers and written in December of 1953, nearly five years after the arrest of Green. The two letters, admitted in evidence, stated that both officers did not recall having had any specific conversation with Green's counsel, Harry Nixon, prior to the trial at Wiscasset, Maine. Such evidence is purely negative and has slight if any bearing on the issue.

The third letter, dated July 28, 1951, was written by Mr. Harry Nixon to a Mr. George E. Wood, who at that time was an attorney at law in Rockland, Maine. The purpose of this letter, as stated by Green, was to show that he did not have a proper opportunity to prepare a defense. On the contrary, Mr. Harry Nixon stated in the letter that he had several conferences with the State Chief of Police and the F.B.I. concerning the case. If the letter has any value, therefore, it would be evidence against the interest of Green.

Green himself testified that Mr. Harry Nixon and his son, Milton, were present in Wiscasset, at the time he was arraigned in the Lincoln Municipal Court on December 6, 1948; that they were there for the purpose of representing him in those preliminary proceedings; that he simply told his attorneys that he was not guilty and did not relate to them any of the details incidental to the charge brought against him at that time; that during the five months that he was confined in lieu of bail in the Kennebec County jail awaiting grand jury action on the charge then pending against him, he corresponded by letter with his attorney on fifteen different occasions and never once mentioned any of the facts relating to his case; and that

although his attorneys were present in the courthouse three hours in advance of trial, they did not discuss the pending case with him at all. He admitted, however, that the opportunity to discuss his case with his counsel before the trial for the purpose of preparing a defense did in fact exist, the only exception being the three weeks just preceding the trial during which he was held incommunicado in the Kennebec County jail.

The testimony of Milton Nixon, who was associated with his father, Harry Nixon, in the trial of the case, was directly contrary to that of Green insofar as his testimony concerning the work preparatory to trial was concerned.

The facts as found by this Court in regard to the first allegation are as follows: George F. Green was arrested in Portland, Maine, on December 5, 1948 on a complaint and warrant for forgery of a $900 check. He was arraigned on that charge on the following day in the Lincoln Municipal Court, located in Wiscasset, Maine.

To represent him at the arraignment, Mr. Green had either his mother or father get in touch with Mr. Harry Nixon, an attorney from Portland, Maine, now deceased. Mr. Green knew Mr. Nixon as an able and competent attorney and had on previous occasions retained him in both civil and criminal matters. He testified that he had sufficient confidence in Mr. Nixon and felt warranted in obtaining him as his counsel in the pending case.

Mr. Nixon, along with his son, Milton, also an attorney, arrived at Wiscasset in the morning of December 6, 1948. They met with Mr. Green, discussed the case with him, and also with the State Police officers.

At the arraignment, Mr. Green pleaded not guilty and waived hearing. Probable cause was found and he was bound over to the May Term of the Superior Court. Being unable to furnish the $5,000 bail, he was taken to the Kennebec County jail, there being no county jail in Lincoln County.

According to Mr. Green's own testimony, he received, late in the night of May 16, 1949, a telegram from his attorneys stating that they would be at the Lincoln County Superior Court, on the following day. The telegram came as no surprise to Mr. Green because he knew that the Grand Jury was in session and anticipated that his matter would be considered by that group. Consequently, when he was told on the morning of May 17, 1949 that he was to be taken to Wiscasset, there was no necessity of his inquiring whether his attorneys would be there also. As Mr. Green testified:

"Well, I retained them to defend me and therefore I thought they would be there and they would know when I was indicted and on which date I would be tried."

Receipt of the telegram, therefore, was notice to him that he could reasonably expect to be tried on May 17, 1949.

Harry and Milton Nixon arrived at the Courthouse about three hours in advance of the trial. During the three hours interval, Mr. Green remained in the sheriff's office, while his counsel conferred with officers concerning matters relating to the case, whether it might be advantageous for him to plead guilty and other matters. Although denied by Green this Court finds that Mr. Harry Nixon, who was the chief counsel, again discussed the case with Green before the jury was impaneled.

At no time did Green protest to his counsel or any one else about being unprepared or going to trial at that time. Also, as Mr. Green testified, there was no indication to him that his attorneys were not prepared to try the case. In any event, Green admits that no motion was made for a continuance on any ground.

During the course of the trial, Green sat outside the rail alongside his attorneys. It was possible for him to communicate with his attorneys, and on one occasion did suggest that two witnesses be obtained in his behalf. He was told, however, that the two witnesses ·were

not needed. For whatever reason, Green did not see fit to make any other suggestions, nor did he take the stand in his defense.

■ Considering the facts of this case, it is the opinion of this Court that Green had ample opportunity to confer with counsel of his own choice and prepare a defense. As a matter of fact, Green admits that there was sufficient time in which to have done something insofar as preparing a defense is concerned. And it is the *opportunity* to prepare a defense that is the important and controlling element and not whether or in what manner his defense was prepared.

But even in this latter respect, his own attorney, Mr. Harry Nixon, now deceased, was a well-known and able trial lawyer, particularly experienced in the trial of criminal cases. It is inconceivable that during a period of five months, Mr. Nixon did not at any time ever confer with his client for the purpose of preparing a defense. Green's testimony to that effect is unworthy of credence and, to be charitable to him, it might be said that self-interest has warped his memory. This Court, therefore, concludes that his first assertion has no basis in fact and is wholly without merit.

### III

■ What occurred after the jury returned its verdict is not entirely clear and the testimony is sharply conflicting. The State produced a state trooper who testified that he distinctly remembers that Mr. Green's chief counsel, Harry Nixon, was present when the jury returned its verdict; that a short conference was had at the Bench between counsel and Judge Beliveau; that Mr. Green was asked by Judge Beliveau if he had anything to say for himself; that Green protested his innocence; and that the Judge then proceeded to pronounce sentence of not less than five and not more than ten years while Mr. Harry Nixon was present in the courtroom.

Green himself testified that his counsel were not present when the jury returned its verdict; that Judge Beliveau asked the sheriff to bring Green's counsel into the courtroom; that his counsel did not return to the courtroom before sentence was imposed; that he attempted to make a motion but was ruled out of order by the Judge who then imposed sentence upon him.

To corroborate his testimony, in part, Green produced a letter from the prosecuting county attorney which stated that Green's counsel left the courtroom "when the jury retired and did not return at the time the verdict was pronounced."

Mr. Milton Nixon's recollection of the events that transpired after the jury returned its verdict was admittedly vague. He testified that it was his impression that he and his father were present when the jury returned its verdict; that the Court went about handling other business; that his father conferred with Judge Beliveau in chambers concerning the filing of exceptions, setting of bail and the sentence; that it was his impression that the sentence was to be from two to four years; that to the best of his recollection his father and he were not in the courtroom when the sentence was imposed.

Green produced his brother and sister-in-law, both of whom merely repeated a conversation had with Mr. Milton Nixon late in October, 1953, to the effect that it was Mr. Nixon's impression that his father and he were not present in the courtroom when the sentence was imposed upon Green.

This Court is of the opinion that it is unnecessary to make an express finding of fact as to whether counsel were present when the jury returned its verdict. Even if Green's version of the facts in this regard were accepted, it would be of such minor legal significance as to refute even a possibility of injury. And such an inconsequential impingement of the constitutional right of an accused to have counsel at every stage of the proceeding is merely error without injury. Martin v. United States, 5 Cir., 182 F.2d 225.

## IV

Notwithstanding the testimony of the State trooper to the effect that Green's chief counsel was present when the sentence was imposed, this Court having in mind the testimony of Mr. Milton Nixon and the letter of the prosecuting attorney, gives Green the benefit of every possible doubt in this regard. In making this finding of fact, the Court acknowledges that it is "leaning over backward" in favor of Green. However, this Court desires to emphasize that absolutely no reflection should be cast upon the trooper's integrity for this Court is convinced that he gave in detail his recollection as to what transpired at that time.

It was stated in Martin v. United States, supra, " * * * that at this time there is no question of constitutional law any more firmly established than the oft enunciated and applied principle that, in the trial of criminal cases in the federal courts, the defendant is entitled to have the guiding hand of counsel at every stage of the proceeding." Martin v. United States, 5 Cir., 182 F. 2d 225, 227. The reasons behind this rule are obvious and well stated in that case. Based upon the finding that counsel were not present when sentence was imposed upon Green, this Court concludes that Green's detention is unlawful.

Despite this conclusion, the outcome is not necessarily an order directing his immediate discharge from the prison. O'Brien v. Lindsey, 1 Cir., 202 F.2d 418, and the other cases cited therein. Pursuant to the authority of the provisions 28 U.S.C. § 2243, this Court has the power to "dispose of the matter as law and justice require." The error committed by the State Court in imposing sentence upon Green in the absence of his counsel does not affect the validity of the verdict of guilty as rendered by the jury. This is not such an error, in the opinion of this Court, as would warrant the issuance of a writ of habeas corpus at this point. Before any final action is taken in this regard, a reasonable period of time should be allowed the State to correct its error in accordance with the order of this Court.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the present application for a writ of habeas corpus be retained on the docket of this Court without disposition until further order of the Court in order to provide the State a reasonable opportunity to take such steps as are appropriate to correct the error in the sentence as found by this Court.

IT IS FURTHER ORDERED that attested copies of this order be mailed by the Clerk of this Court to the Petitioner herein, the Respondent herein, and to the Office of the Attorney General of the State of Maine.