STATE OF NEW JERSEY, RESPONDENT-APPELLANT, v.
BENNY JENKINS, PETITIONER-RESPONDENT.

Argued January 26, 1960—Decided April 4, 1960.

*Mr. C. William Caruso,* Special Legal Assistant Prosecutor, argued the cause for respondent-appellant (*Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney. *Mr. C. William Caruso,* of counsel and on the brief).

*Mr. Samuel M. Koenigsberg* argued the cause for petitioner-respondent (*Messrs. Hymen B. Mintz* and *Samuel M. Koenigsberg,* attorneys. *Mr. Samuel M. Koenigsberg,* on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J. The State appeals from a judgment of the Appellate Division, one judge dissenting, vacating the

sentence imposed upon defendant and directing resentence. 57 *N. J. Super.* 93 (1959).

 Both the majority and dissenting opinions held the right of an accused "to have the assistance of counsel in his defense," *N. J. Const.* (1947), *Art.* I, *par.* 10, includes the right to counsel at the time of sentence. We agree. The Appellate Division then proceeded to make factual findings with respect to whether defendant had waived that right. In our view, the issue was not before the Appellate Division. The petition for *habeas corpus* did not raise it, nor were the factual aspects tried or determined in the trial court.

The allegations of the petition are seemingly addressed to unfairness with respect to the obtaining of confessions, waiver of indictment, and the entry of the pleas of guilty. Although defendant did not categorically assert his innocence of any of the crimes, one would gather his purpose was to seek a trial of the issue of guilt. In the course of the petition, he said the court assigned counsel "after the defendant had pleaded guilty" (the transcript shows, and it is not here disputed, that in fact the court declined to accept the pleas, despite defendant's statement that he did not wish counsel, until defendant had first been advised by an experienced attorney who was present in the courtroom and who consulted with defendant at the court's request). The petition continues with the statement, "However, Assigned Counsel conferred with defendant but 5 or 10 minutes and surely the Court cannot contend that this is the assistance of counsel. He didn't even have time to talk the case over thoroughly with the defendant." Thus far defendant seems to be speaking only of the validity of the judgments of conviction. Then follows the paragraph which the Appellate Division apparently deemed to present the issue it decided:

"(g) The Court imposed a very severe sentence on the accused one who has never been in trouble prior to this conviction and noted criminals who are habituals and received such harsh and inhuman a sentence as has been placed upon this child who unfortunately did not have the assistance of adequate Counsel because of the few minutes counsel was allowed to confer with the defendant."

■ The allegation is inartistic and obscure. We understand the difficulties of articulation which limit defendants in prison-prepared applications, but issues must nonetheless be projected. If a petition suggests the possibility of the denial of a right, the prisoner may be asked to expand upon his petition, and if circumstances warrant, counsel may be assigned to assist him. But the issue must appear; it should not be surmised. We cannot find a charge that defendant wanted and was denied counsel in connection with sentence or was unaware of his right to such aid. The issue was injected at argument before the trial court in the present proceedings upon the assertion of counsel rather than upon the sworn statement of defendant. The trial court held there was no right to counsel at sentence and hence did not deal with the truth of the charge thus sought to be added.

■ We are not dealing with a situation in which a defendant sought but was denied the aid of counsel. *State v. Ballard,* 15 *N. J. Super.* 417 (*App. Div.* 1951), affirmed on opinion below 9 *N. J.* 402 (1952). The transcript of the pleading to the accusations shows that defendant was asked whether he wanted counsel to be assigned before pleading and that he answered that he did not. We are satisfied that *prima facie* defendant thereby waived the right now urged in his behalf. *Cf. State v. Flood,* 32 *N. J. Super.* 161 (*App. Div.* 1954). Although when a general offer to provide counsel is declined it is desirable to direct a further question with respect to the aid of counsel at sentence, thereby to avoid a later claim that a defendant failed to appreciate the situation fully, yet we cannot say the transcript here shows the waiver was not made or was not made intelligently and understandingly. A man about to plead guilty knows the immediate consequence will be a sentence, the final act in the prosecution. We believe it likely that men so situated understand the offer of counsel relates to the full process, including the inevitable judgment.

■■ The formula must be fair to the State as well as

to the accused. *Snyder v. Commonwealth of Massachusetts,* 291 *U. S.* 97, 122, 54 *S. Ct.* 330, 78 *L. Ed.* 674, 687 (1934). We do not have a direct appeal from the judgment of conviction, in which situation a doubt as to waiver may be dissipated by the simple expedient of a remand to the sentencing judge for easy revaluation. Rather here the attack is collateral in nature and comes long after the event. In such circumstances, the memory of the sentencing judge is likely to have faded or, as in this case, the sentencing judge may no longer be a member of the trial court. It seems to us that when the attack is thus collateral in nature a defendant should allege and prove that he did not intelligently and understandingly waive the right to counsel at sentence. *Moore v. State of Michigan,* 355 *U. S.* 155, 78 *S. Ct.* 191, 2 *L. Ed.* 2d 167 (1957); *Johnson v. Zerbst,* 304 *U. S.* 458, 58 *S. Ct.* 1019, 82 *L. Ed.* 1461 (1938); *Davis v. United States,* 226 *F.* 2d 834 (8 *Cir.* 1955), *certiorari* denied 351 *U. S.* 912, 76 *S. Ct.* 702, 100 *L. Ed.* 1446 (1956). His burden of allegation and proof should go further and include a showing of a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel. *McKinney v. United States,* 208 *F.* 2d 844 (*D. C. Cir.* 1953). We are not dealing with a trial of the issue of guilt as to which prejudice may quite readily appear. Rather we are dealing with the matter of sentence. We do not belittle the role of counsel at that stage. Rather we stress that our practice is designed to assure an impartial presentation of pertinent material and frequently is far more productive for a defendant than are the efforts of counsel. *R. R.* 3:7–10(*b*) provides mandatorily that "The probation service of the court shall make a pre-sentence investigation and report to the court before the imposition of sentence or the granting of probation." *State v. Culver,* 23 *N. J.* 495, 500, 129 *A.* 2d 715 (1957), *certiorari* denied 354 *U. S.* 925, 77 *S. Ct.* 1387, 1 *L. Ed.* 2d 1441 (1957). Thus we bring to the assistance of the sentencing judge the investigatorial facilities of the probation office, an arm of the court rather

than of the prosecuting forces of the State. Although the probation report does not supersede the role of counsel, surely the justice of a sentence no longer rests so heavily upon his contribution. We add parenthetically that here the prosecution did not speak at sentence and hence there was no disparity in oral advocacy. In these circumstances it would be unreasonable to assume that lack of counsel necessarily involves a likelihood of prejudice. Whether that likelihood exists must be determined in good part by measuring what is offered· in attacking the sentence against what the probation report revealed.

We called for the probation report in this case and found a striking consistency between its contents and the proof offered in the present proceedings and referred to in the opinion of the Appellate Division. The report is thorough and exhaustive. It reveals a full interview of defendant with respect to the offenses and even a correction by him as to the date of one of the crimes. His personal and family histories are detailed. So also are his educational and employment records as verified by independent investigation. With respect to "Personality Makeup," the report reads in part:

"Defendant gives us the impression that he is somewhat retarded. During interview he appeared nervous and stuttered to some extent. However as far as giving details as to the circumstances of the offense he was quite cooperative. We noticed that he was very friendly but during the interview he was constantly moving about as if it were impossible for him to stay in one position for any length of time. Unquestionably we have an unstable individual whose broken home, family influences and neighborhood environment have finally taken their toll."

The "Summary" in the report included:

"The circumstances of the present offense just revolve about a neurotic, unemployed hard pressed individual who is the product of a broken home and poor maternal influence."

On the summary sheet defendant's "Intelligence" is rated as "retarded" as against "Average" and "Superior."

The report presented defendant's situation sympathetically. We do not know what more counsel could have shown. We make no assumption in that regard. Rather we refer to the report to emphasize our view that it would be unreasonable to assume in all cases that counsel could have revealed something that would likely affect the sentence. And in evaluating what is offered, one must bear in mind that the sentencing judge is limited by statute in his choice of an institution for confinement.

■ The Appellate Division suggested that if counsel spoke for defendant he at least would have apprised the sentencing judge of defendant's claim in his petition that:

"Defendant-petitioner's plea was entered because of promises by officer of the robbery squad who I do not know by name but who I could pick out of a line-up. I was promised a five year indefinite term to Annandale Reformatory if I would admit the crimes and enter a plea to them, and they were voluntarily as required by law."

Of course an alleged promise by some police officer, however pertinent to an application to withdraw a plea of guilty, could hardly have swayed a judge on sentence. But more than that, we cannot assume defendant's factual claim is true merely because his petition asserts it and then upon that assumption conclude that the lack of counsel was prejudical. Defendant's claim of a promise comes rather late in the day; it is not entitled to automatic credit.

The judgment of the Appellate Division must therefore be reversed and the matter remanded to the trial court with directions to permit defendant with the aid of assigned counsel to amend or supplement his petition under oath to allege, if defendant so claims the facts to be, that he did not intelligently and understandingly waive the benefit of counsel at sentence and that his rights could not have been fairly protected without counsel.

■■ We agree with the Appellate Division that while ordinarily the issue should be initiated by motion in the cause rather than by a petition for *habeas corpus,* it was

here appropriate to include it in a petition for a writ based upon still other grounds. In this connection, however, we add our strong disapproval of the piecemeal approach whereby only one of a number of issues was determined. Absent extraordinary circumstances, all issues on *habeas corpus* should be fully resolved by the trial court before appellate review.

The judgment is therefore reversed and the matter remanded to the trial court for further proceedings not inconsistent with this opinion. No costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.