65 N.J. Super. 20 (1961)
166 A.2d 797
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RALPH ERCOLINO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 19, 1960.
Decided January 9, 1961.
*22 Before Judges GOLDMANN, FOLEY and MINTZ.
*23 Mr. Ralph Ercolino, defendant-appellant, pro se.
Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney for plaintiff-respondent (Mr. John W. Applegate, Assistant Prosecutor, of counsel).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from the denial of his application for a writ of habeas corpus. The verified complaint filed by defendant alleges, inter alia, that at the time he entered pleas of guilty to four charges of armed robbery which were contained in two indictments, he did not have the benefit of counsel, and that because of lack of knowledge of the English language he did not voluntarily and intelligently waive trial by jury nor did he understand the import of his pleas of guilty; further that he was improperly sentenced, since at the time sentences were imposed, he was not represented by counsel.
"The historic writ of habeas corpus is the `precious safeguard of personal liberty' * * *; it is the only writ which was preserved eo nomine in our State Constitution (Art. I, par. 14), and our courts are rightly fervent to insure that it is ever available for the protection of the accused * * *." State v. Cynkowski, 10 N.J. 571, 577 (1952).
The procedure governing the application for the writ is outlined in N.J.S. 2A:67-17 as follows:
"The judge to whom the application is made shall grant such writ without delay or issue an order directing the defendant named in the complaint to show cause why the writ should not be granted, unless it appears from the complaint or otherwise that the applicant or person confined or restrained is not entitled thereto."
When a convicted defendant files a petition for a writ of habeas corpus the court may immediately issue the writ for hearing thereon, or dismiss the petition because of insufficiency on its face, or call for a formal answer by the State. The petition, answer and reply may disclose that there are *24 no allegations remaining which would, under controlling principles, warrant the issuance of the writ, and in that event the petition may still be dismissed. If, however, such material allegations do remain, the writ must issue for oral hearing thereon and determination, with the defendant who obtained the writ having the burden of proving his charges. State v. Cynkowski, supra.
The hearing contemplated by the statute is conducted to determine the defendant's contentions on the merits. There is no provision in the law, statutory or otherwise, for a plenary hearing of the merits on the application for the writ. Indeed, the emphasis which our courts have placed upon the necessity for issuing the writ when the defendant has made a prima facie showing under oath of his right to it negates the idea that the substance of his claim may be pretested on the application. See State v. Gailes, 64 N.J. Super. 232 (App. Div. 1960); State v. Lenkowski, 24 N.J. Super. 444, 447 (App. Div. 1953).
The scope of our review, therefore, is limited to a determination of whether the trial judge properly denied defendant's application in light of the verified complaint, the supporting affidavits, and the transcripts of the proceedings taken at the time defendant's pleas of guilty were accepted by the trial court and later when sentences were imposed.
Generally, on application for a writ of habeas corpus consideration of the trial judge should be confined to the allegations of the complaint. In re Leibowitz, 43 N.J. Super. 579, 583 (App. Div. 1957). An exception not here present is where the official files and records refute the factual allegations contained in the application. State v. Raicich, 30 N.J. Super. 316 (App. Div. 1954). While it is not the function of the court to determine the truth or falsity of the allegations contained in the application, this case presents certain undisputed facts which, of themselves, lend support to defendant's contentions. Ercolino was 22 years of age at the time of his arrest. He had come to this country from *25 Italy only 11 months before. He had only four years of grammar schooling in his native land and upon his arrival he neither spoke nor understood the English language. His parents, also immigrants from Italy, adhered to the practice of speaking the Italian language in their home and so defendant was afforded little opportunity to acquire knowledge of our tongue. It is alleged, and at this stage of the case undenied, that what little he learned of the English language in the short time he was here, was acquired through his association with his four American born co-defendants named in the indictments to which he pleaded guilty.
The group of five men were arraigned before the trial judge on March 5, 1954 and entered pleas of guilty. Under interrogation by the court it developed that defendant said he had not consulted counsel, and when asked by the court whether he desired such advice, he replied that he did. Thereupon, the judge entered pleas of not guilty in his behalf and appointed Ascenzio Albarelli, Esq., a member of the bar of this State, to represent him, meanwhile remanding defendant to the county jail pending trial. Portions of the colloquy between the court and Clifford Clayton and Wallace Miller, two of the co-defendants who were also arraigned, together with remarks of the defendant at the time, inferentially at least, buttress defendant's basic contention that he did not understand the nature and effect of the proceedings. They follow:
"The Court: The Court appoints Ascenzio Albarelli to represent you. The Court will remand you to the county jail for trial and sets the trial date as March 15, 1954.
Mr. Clayton, have you consulted counsel?
Clifford Clayton: Yes, I have. Albarelli, the one you just appointed to Ralph. I don't think Ralph understands what you was talking about, sir.
The Court: Well, he will.
Clifford Clayton: No. I mean, he has a lawyer.
The Court: You have a lawyer?
Ralph Ercolino: I don't know. I better ask my mom. I'm not sure.
The Court: He says no.
*26 Court Officer Kaplan: Your Honor, he wants to talk to you; Ercolino.
Ralph Ercolino: Guilty.
Clifford Clayton: I just told him, I mean what you meant when you told him. See, he didn't understand what you meant. I mean, like if he had a lawyer or pleads guilty or not guilty. He understands English, but, I mean, he just doesn't understand some of the big words you use.
Wallace Miller: His lawyer explained it to him and told him to make a guilty plea all the way. He made a statement that he did it and we all did it, so he knows he is guilty and he wants to plead guilty, but you just had him all mixed up with all them words.
The Court: No, I am not trying to mix him up. Mr. Ercolino, you consulted a lawyer; you have spoken with him, have you not?
Ralph Ercolino: I don't know, but I'm asking my mother because my mother wants to get a lawyer. I don't know.
The Court: Didn't you talk to a lawyer?
Ralph Ercolino: No.
The Court: Didn't you talk to Mr. Albarelli?
Ralph Ercolino: Yes, I don't know My mother wants to find another lawyer.
The Court: All right. Mr. Albarelli is appointed in any event. The plea of not guilty will stand. If he doesn't know what he is doing I can't help it. Remanded to jail."
It appears that Ercolino then left the courtroom. He claims that he then talked with his co-defendants who persuaded him to enter the pleas of guilty upon the representation that if he did he would be released from custody. Thereupon, without the advice of Mr. Albarelli or of anyone else he was returned to the courtroom where the following transpired:
"The Court: What do you wish now, Mr. Ercolino?
Ralph Ercolino: Guilty.
The Court: Do I understand that you wish to retract the plea of not guilty which I entered in your behalf?
Ralph Ercolino: I understood that before, sir, and I'm guilty and I understand it, sir. Guilty.
The Court: Do I understand that you wish to retract the plea that the Court entered in your behalf as to indictments number 6734 and 6735 and you wish now to enter a plea of guilty?
Ralph Ercolino: No.
Mr. Joseph Mattice: If the Court please, could I volunteer to help?
*27 The Court: Mr. Mattice, if you will act as amicus curiae I will appreciate it very much.
Mr. Mattice: For the benefit of the record I think it might be advisable."
Ercolino accompanied by Mr. Mattice again left the courtroom, presumably to confer. When they returned a short time later this happened:
"The Court: Mr. Mattice.
Mr. Mattice: I have talked with the defendant and he advises me there is no mistake. There are four charges that all five are guilty of. The five of them were all supposed to plead guilty. He wanted to plead guilty this morning when he was talking to you. He wants to plead guilty. There is no question that he is involved in all four of the crimes for which he is indicted. There is no question about it at all. Am I correct?
Ralph Ercolino: Yes.
The Court: I appreciate very much your assistance, Mr. Mattice, and the plea of not guilty entered by the defendant will be withdrawn and will you arraign him, Mr. Prosecutor. It's indictments Number 6734 and 6735.
Mr. Gray: Ralph Ercolino, you have heretofore entered pleas of not guilty to indictment 6734 and 6735 charging you with armed robbery. What is your desire with reference to those pleas?
The Court: Mr. Mattice, will you?
Mr. Mattice: Guilty or not guilty?
Ralph Ercolino: Guilty.
Mr. Mattice: To both of them?
Ralph Ercolino: All four.
Mr. Mattice: All four? There were four?
The Court: There were only two indictments.
Mr. Gray: There are two counts in each.
Ralph Ercolino: It's four charges."
The right of an accused in a criminal case "to have the assistance of counsel in his defense" is granted by our Constitution, N.J. Const. (1947), Art. I, par. 10. When counsel is assigned at the request of a defendant he becomes bound to fully and faithfully serve the interests of his client within the boundaries of professional ethics. His duties include not only the extremely important matter of satisfying himself that the defendant understands the nature of the charge laid against him, and the consequences of a *28 plea of guilty, but also of fully acquainting himself with the nature of the charge and the facts of the case so that he may informedly advise the defendant concerning the same. Patently, the burden carried by counsel is particularly exacting where, as here, an intelligent and informed decision by the defendant of what course he should take may be hampered by his illiteracy. On the face of the record it appears that Mr. Mattice, however well intentioned, served not as defendant's advocate but as amicus curiae, and in the absence of proof to the contrary it cannot be assumed that he fully understood that his duty to the defendant in the circumstances, if defendant's constitutional rights were to be observed, was identical with what it would have been had he instead of Mr. Albarelli been assigned to Ercolino's defense. The affidavit of Mr. Albarelli establishes that he did not at any time consult with, or advise, the defendant.
Consequently defendant's allegation of the denial of counsel stood unchallenged, and the application for the writ should have been granted so that on a plenary hearing, at which the nature and extent of the advice given by Mr. Mattice would be revealed, the court could justly determine whether or not defendant was accorded the full benefit of his right to counsel. Additionally, we think that defendant made a prima facie showing of his lack of understanding of the implications of his pleas, which required granting his application.
On April 2, 1954 defendant, without an attorney, appeared in court for sentence. The following took place:
"Mr. Pillsbury: Ralph Ercolino?
Ralph Ercolino: Yes.
Mr. Pillsbury: The State in these matters moves for sentence.
The Court: Mr. Ercolino, have you anything to say?
Ralph Ercolino: No, sir.
The Court: Ralph Ercolino, the Court sentences you to the New Jersey State Prison for not less than three nor more than five years on each of the four charges. The terms to run consecutively.
The Court gives the defendant credit for the time spent in jail of 77 days and recommends that the Probation Department consider *29 the Ercolino matter and take it up with the Immigration Authorities to see if deportation cannot be arranged."
The constitutional right of an accused to have the assistance of counsel in his defense includes the right to counsel at the time of sentence. State v. Jenkins, 32 N.J. 109, 112 (1960). In a letter opinion denying defendant's application the trial court acknowledged this to be the fact and went on to say:
"However, if he did not want counsel at the arraignment and before pleading, he prima facie waives his right to counsel at any time. According to the Jenkins case the defendant `should allege and prove that he did not intelligently and understandingly waive the right to counsel at sentence.' `His burden of allegation and proof should go further and include a showing of a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel.' It is the Court's opinion that this defendant has failed to show that he did not intelligently and understandingly waive the right to counsel at sentence and did not show a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel. Prima facie he waived the right and he has not shown either of the things which the Jenkins case demands."
We have carefully examined the arraignment and sentence proceedings, the essential parts of which are reproduced hereinabove and are unable to discern in them even a suggestion that defendant waived his right to counsel on either occasion. Indeed, the opposite appears for, as noted above, he accepted the court's offer of counsel on arraignment. In Jenkins, supra, where defendant expressly waived counsel at the time of arraignment, such waiver was held to have carried with it prima facie the surrender of his right to counsel on sentence. 32 N.J., at p. 113. The present case presents the converse of this proposition. Defendant having accepted the assignment of counsel at the arraignment was entitled to the benefit of such services from that point forward to and including the sentencing proceedings. Thus, while Jenkins is factually inapposite to the present case, the philosophy of it supports defendant's *30 contention that the failure of the court to provide him with counsel on the sentencing proceedings constituted a denial of his rights. Patently, the state of the record on this phase of defendant's application was such as to require the issuance of the writ of habeas corpus.
Both the letter opinion of the trial court and the colloquy between court and counsel on the application for the writ strongly suggest that in the trial court's view the granting or denial of defendant's application depended entirely upon the alleged defect in the sentencing procedure, and that if such a defect were found to exist the relief sought by defendant would be limited to resentence. Since the matter must be remanded, we deem it advisable to point out that if the court after a hearing concludes that the defendant did not intelligently enter his pleas or that he did not have the benefit of counsel in so doing, the pleas to the indictments should be set aside and pleas of not guilty should be entered in defendant's behalf.
The matter is remanded to the County Court with the direction that the writ of habeas corpus issue forthwith with proceedings to follow in accordance with the statutory procedure and the rules and practice of the court.
Reversed and remanded.