**Petition of Alexander McALLISTER for Writ of Habeas Corpus.**
**Civ. No. 905–61.**

United States District Court
D. New Jersey.
Aug. 25, 1962.

LANE, District Judge.

Petitioner is presently confined in the New Jersey State Prison at Trenton, owing to his guilty plea on a charge of robbery before Judge Foley in the Essex County Court on May 2, 1955. Judge Gaulkin imposed sentence on May 11, 1955. Although McAllister thereafter failed to appeal his sentence, he did make application for a state writ of habeas corpus before the Honorable James R. Giuliano, Essex County, Law Division. After conducting a hearing on McAllister's petition on July 22, 1958, Judge Giuliano, in an oral opinion, denied the application. Subsequently, the Superior Court of New Jersey, Appellate Division, affirmed Judge Giuliano's decision. McAllister v. State of New Jersey, 62 N.J. Super. 126, 162 A.2d 293 (1960). The New Jersey Supreme Court denied certification on November 14, 1960, in an unreported order. Certiorari to the United States Supreme Court was applied for, and on October 9, 1961, was denied. McAllister v. New Jersey, 368 U.S. 841, 82 S.Ct. 67, 7 L.Ed.2d 40 (1961).

An examination of the record reveals that petitioner has put forth two contentions,—(1) he allegedly " * * * was deprived of his Constitutional Right to the assistance of counsel at the time of his sentence," and (2) he allegedly " * * * was deprived of his Constitutional Right to the assistance of counsel at the time of his plea."

### SENTENCE

The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions, the accused shall have the right to "the Assistance of Counsel for his defence."[1] The Su-

Kenneth J. Dawes, Jr., Trenton, N. J., for petitioner.

Brendan T. Byrne, Pros. of Essex County, for State of New Jersey.

---

1. The Sixth Amendment of the United States Constitution states: "AMENDMENT VI—JURY TRIAL FOR CRIMES, AND PROCEDURAL RIGHTS.

 "*In all criminal prosecutions, the accused shall enjoy the right* to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and *to have the Assistance of Counsel* for his defence." (Emphasis added.) U.S.C.A. Const. Amend. VI.

preme Court, in commenting on this constitutional safeguard, evinced the opinion:

"The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious." Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938).

Thus, in criminal proceedings before the federal court, a defendant not only has the right to retain counsel, but the right to have the federal government assign counsel if he lacks the financial means to employ his own. Id. at 462–463, 58 S.Ct. at 1022.

Since under the Constitution a defendant is entitled to have the guiding hand of counsel at every stage of a federal criminal trial, absent an intelligent waiver thereof, federal courts should provide for counsel at the time of sentence imposition. See Martin v. U. S., 182 F.2d 225, 226, 20 A.L.R.2d 1236 (5th Cir.), cert. denied, 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950). As expressed in the Martin decision:

"The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's counsel at that time neces-

sary if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendants' past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation, or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial." Ibid. See Antieau, Commentaries on the Constitution of the United States, 321 et seq. (1960 Ed.) for discussion of right to counsel in federal criminal trials.

We are, however, in the instant petition, considering proceedings that occurred not in the federal courts but in the New Jersey State courts. It is clear though that the New Jersey constitution, as interpreted by the state Supreme Court, requires that " * * * the right of an accused 'to have the assistance of counsel in his defense,' N.J. Const. (1947), Art. I, par. 10, includes the right to counsel at the time of sentence.[2] State v. Jenkins, 32 N.J. 109, 112, 160 A.2d 25, 27 (1960).[3] Yet, un-

---

**2.** Article I, Par. 10 of the New Jersey constitution states:

"10. Right of Persons accused of crime.

"10. *In all criminal prosecutions* the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have com-

pulsory process for obtaining witnesses in his favor; *and to have the assistance of counsel in his defense.*" Emphasis added. (N.J.S.A.Const. Art. I, Par. 10.

**3.** Because the appellate division, and not the trial court, made factual findings with respect to whether the prisoner waived right to counsel at the time of sentence, the New Jersey Supreme Court in Jen-

der New Jersey law, the state courts do not have absolute authority to grant the right of resentence to a petitioner who attacks, not by appeal but collaterally, the validity of sentence on the ground he had not been accorded assistance of counsel. The courts must, instead, examine a petitioner's allegations and proofs to determine whether he has demonstrated " * * * a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel." Id. at 114, Id. at 28.[4]

■ Moreover, we must bear in mind that the due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment but requires this court to appraise all the facts in the case to see whether there has been a denial of fundamental fairness shocking to the universal sense of justice. Johnson v. Zerbst, 304 U.S. 458, 461–462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). To quote Mr. Justice Roberts:

"* * * [W]hile want of counsel in a particular case may result in a conviction lacking in such fundamental fairness, we cannot say that the Amendment embodies an inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel." Betts v. Brady, 316 U.S. 455, 473, 62 S.Ct. 1252, 1262, 86 L.Ed. 1595 (1942).

The New Jersey Supreme Court in its wisdom has declared that the New Jersey Constitution compels the trial court to appoint counsel for an indigent defendant at time of sentence. (When the trial court sentenced McAllister, the custom in New Jersey was not to appoint counsel at time of sentencing.) But it has also held the defendant will be unable collaterally to attack a denial of counsel unless he can thereby demonstrate prejudice. See State v. Jenkins, supra. This rule is in harmony with our traditional notions of fair play. Although the courts must protect the accused by appointment of counsel at time of sentence, the court precludes the accused, wherein he collaterally attacks the sentence, from wasting the valuable time of all concerned by making groundless contentions. If the accused demonstrably shows "a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel," relief will be forthcoming. In any given case, if lack of counsel caused no injustice, the New Jersey courts, logically and properly, deny relief. The issue, therefore, before us is to determine upon consideration of the entire record whether McAllister's safeguards under the due process clause were violated by reason of the court's failure to assign him counsel at the time of sentence imposition.

The following colloquy occurred between Judge Gaulkin and McAllister during the imposition of sentence:

"THE COURT: Alexander McAllister, is there anything you want to say before the court imposes sentence?

kins reversed the lower court's decision directing petitioner to be resentenced, and the court remanded the New Jersey habeas corpus petition for further proceedings. Also, see Constitutional Law, XV Rutgers L.R. 199 (1961).

4. See, e. g., State v. Ercolino, 65 N.J. Super. 20, 166 A.2d 797 (1961), wherein the appellate court reversed the lower court's denial of a hearing on a writ of habeas corpus. Applicant was 22 years of age, had been in U. S. only 11 months, had four years of grammar schooling in her native land, and had re-

ceived little opportunity to acquire knowledge of the English language. Also see Hill v. United States, 368 U.S. 424, 82 S. Ct. 468, 7 L.Ed.2d 417 (1962). There trial judge had not afforded petitioner, as required by Rule 32(a) of Federal Rules of Criminal Procedure, 18 U.S.C.A., an opportunity to make a statement in her own behalf at time of sentencing. Held, a trial judge's failure to comply with this rule, in the absence of aggravating circumstances, is not error that can be raised by collateral attack. Case noted in 62 Columbia L.R. 884 (1962).

"DEFENDANT MC ALLISTER: No, sir.

"THE COURT: You pleaded guilty to a charge of robbery. Is that correct?

"DEFENDANT MC ALLISTER: Yes, sir.

"THE COURT: You conferred with a lawyer at the time you pleaded.

"DEFENDANT MC ALLISTER: Yes, sir.

"THE COURT: I have your record here. Is it correct that in 1953 you were sentenced to the New Jersey State Prison on a charge of breaking, entering and larceny?

"DEFENDANT MC ALLISTER: Yes, sir.

"THE COURT: You were paroled in October 1954?

"DEFENDANT MC ALLISTER: Yes, sir.

"THE COURT: Prior to that time you were, for a period, in the Essex County Penitentiary, were you?

"DEFENDANT MC ALLISTER: Yes, sir.

"THE COURT: This particular offense that you figured in was vicious, calculated and planned. The maximum I could give you is fifteen years, but since you pleaded guilty I am taking that into consideration.

"So I sentence you to a term of not less than eight nor more than fourteen years in the New Jersey State Prison. That will be the disposition of Accusation 55543."

The trial judge did not offer McAllister the aid of counsel. But the court did ask McAllister if there were anything he wished to say; to which he answered, "No, sir." Moreover, the court verified defendant's guilty plea by asking whether, in fact, he had pleaded guilty to a charge of robbery. Finally, Judge Gaulkin indicated to the prisoner that although the court could impose a sentence of fifteen years, it would only sentence him to a term of not less than eight, nor more than fourteen years in light of his guilty plea. The above remarks reflect a desire upon the part of the court to act reasonably and justly in the imposition of sentence.

In addition, Judge Gaulkin had the benefit of the prisoner's probation report. Chief Justice Weintraub cogently stated in Jenkins the purpose of the probation service.

" * * * Rather we are dealing with the matter of sentence. We do not belittle the role of counsel at that stage. Rather we stress that our practice is designed to assure an impartial presentation of pertinent material and frequently is far more productive for a defendant than are the efforts of counsel. R. R. 3:7–10(b) provides mandatorily that 'The probation service of the court shall make a pre-sentence investigation and report to the court before the imposition of sentence on the granting of probation.' * * * Thus we bring to the assistance of the sentencing judge the investigatorial facilities of the probation office, an arm of the court rather than of the prosecuting forces of the State. Although the probation report does not supersede the role of counsel, surely the justice of a sentence no longer rests so heavily upon his contribution." 32 N.J. 109, 114–115, 160 A.2d 25, 28 (1960)

We called for the pre-sentence investigation report in this case. Among other things, it contained statements by the doctor's wife (her shoulder was broken during the robbery), McAllister, the co-defendant Bartley, and the officers who made the arrests at the scene. The probation officer also detailed petitioner's history of contact with law enforcement authorities,—on November 11, 1945, McAllister went AWOL from the U. S. Army; on January 6, 1946, he repeated this AWOL offense; on September 5, 1946, the magistrate's court sentenced him to 30 days in the Hudson County

Jail for being a disorderly person; on January 24, 1947, Judge Sugrue of the 3rd Criminal Court dismissed a charge of atrocious assault and battery and attempted robbery against petitioner and committed him to Veterans Hospital at Lyons, New Jersey; on January 1, 1950, Magistrate Heller placed petitioner on probation for one year for the offense of assault and battery; in June 1951 Judge Naughright sentenced petitioner to 18 months custody for the offense of assault and battery, but he served only three months with 15 months probation; on January 23, 1952, the probation was revoked and he was committed to the County Penitentiary for balance of term; on May 28, 1953, Judge Conlon sentenced petitioner for two terms of 2 to 5 years in the New Jersey State Prison to run consecutively for the offenses of breaking, entering, and larceny; and on October 5 (or 15), 1954, petitioner was paroled.

In addition, the report expressed the view:

"The McAllisters [petitioner's parents] pride themselves in the fact that they have assumed full responsibility and support of these children [petitioner's three children] both working in order to properly maintain and provide for them."

It further comments:

"It is quite probable that defendant from the date of his parole in October 1954 until the day this incident occurred had enjoyed normal recreation such as watching ballgames, going fishing, attending movies, watching television and following outdoor athletic meets. Yet on the very first day that he suc-

cumbed to the lure of drinking intoxicants became involved in this very serious anti-social act. Yet according to Dr. Owenstein who viewed both defendant and his companion immediately after they were subdued by police insist that neither one showed any signs of being drunk."

And in the section entitled "Summary," the investigator states:

" * * * Defendant has a very poor education due to his own mental capacity and has the potentials of a good worker but for some reason or other takes days off without permission. * * * Yet during interview defendant seemed to have all of his mental facilities and during this investigation was very cooperative."

The probation report thoroughly covers the background of McAllister and of the admitted robbery. Nothing found therein leads us to the conclusion that the sentencing judge abrogated petitioner's constitutional safeguards.

 There appears to be a conflict in the authorities on whether the presence of counsel for the accused at the time of sentence is necessary to the validity of the proceedings, unless the accused intelligently waives counsel's presence. See Annotation, 20 A.L.R.2d 1240 et seq. for discussion of whether absence of counsel for accused at time of sentence requires relief. It is our conclusion that we possess the power to grant habeas corpus for denial of counsel at time of sentence. See, e. g., Green v. Robbins, D.C., 120 F.Supp. 61 (1954).[5]

 For us to rule, however, in the circumstances of this case, that the ab-

5. In the Green case, it was held that absence of counsel at time of sentence in the state court made detention thereunder unlawful. But the court did not warrant issuance of the Great Writ before a reasonable period of time had been allowed for the State to correct its error by resentencing the prisoner. Thus, we should note in the instant case that even if, assuming arguendo, we granted the writ of habeas corpus to McAllister, we would decree " * * * that the present application for a writ of habeas corpus be retained on the docket of this Court without disposition until further order of the Court in order to provide the State a reasonable opportunity to take such steps as are appropriate to correct the error in the sentence as found by this Court." See Id. at 67.

sence of counsel at petitioner's sentencing violated those fundamental principles of liberty and justice which are at the base of all our civil and political institutions would be fanciful and capricious. It is unfortunate that the trial court did not assign counsel at relator's sentencing. Yet, we must agree with the holding of the New Jersey Superior Court, Appellate Division,—namely, that in the circumstances presented, McAllister's lack of counsel at time of sentencing did not show such prejudice as to require a ruling that his guarantee of basic justice was infringed thereby. See McAllister v. State of New Jersey, 62 N.J.Super. 126, 130–132, 162 A.2d 293, 295–296 (1960); certification to New Jersey Supreme Court denied in unreported order (1960); cert. denied 368 U.S. 841, 82 S.Ct. 67, 7 L.Ed.2d 40 (1961). Accordingly, we find that the state court correctly applied its standard for determining whether an accused's absence of counsel at time of sentencing impinged his right to fundamental justice. Consequently, in regard to relator's first argument, the petition for a writ of habeas corpus is denied.

Counsel for petitioner requested a hearing in regard to petitioner's argument that absence of counsel at sentencing prejudiced his constitutional safeguards. To quote counsel:

> "At this juncture it can only be speculated as to what counsel would have said at the time of sentencing and what effect, if any, that would have upon the sentence itself."

McCoy v. Tucker, 259 F.2d 714, at 716 (4th Cir.1958) ruled:

> "When state remedies have been exhausted, the applicant for federal habeas corpus still does not have the automatic right to a hearing. 'That most claims are frivolous,' said Justice Frankfurter, 'has an important bearing upon the procedure to be followed by a district judge,' Brown v. Allen, 1953, 344 U. S. 443, 460, 73 S.Ct. 397, 409, 443, 97 L.Ed. 469, and the judge, in his discretion, may refuse the writ without evidence or argument."

Relator's petition lacks any allegation of factual circumstances that presents to us the kind of dispute that must be probed into and held in abeyance until after a hearing. It is one matter for the court to utilize a hearing as a conjectural process, wherein a speculative expedition reasonably may lead to germane facts. But it is quite another matter to utilize a hearing as a conjectural process, wherein a speculative expedition may not reasonably lead to germane facts. The record before us manifests the facts needed to decide McAllister's petition. Consequently, we deny petitioner's request for a hearing on his lack of counsel at time of sentencing.

### PLEA

Petitioner argues that he "was deprived of his constitutional right to the assistance of counsel at the time of his plea." The exchange between Judge Foley and McAllister and Bartley, when they pleaded guilty to robbery, was as follows:

"MR. JUNG (Assistant Prosecutor): Is your name Bartley?

"THE DEFENDANT BARTLEY: Yes, sir.

"MR. JUNG: Charles M. Bartley?

"THE DEFENDANT BARTLEY: Yes, sir.

"MR. JUNG: And you are Alexander McAllister?

"THE DEFENDANT MC ALLISTER: Yes, sir.

"MR. JUNG: Are you financially able to retain counsel?

"THE DEFENDANT MC ALLISTER: No, sir.

"MR. JUNG: How do you plead?

"THE DEFENDANT BARTLEY: Guilty.

"THE DEFENDANT MC ALLISTER: Guilty.

"MR. JUNG: You are Mr. McAllister?

"THE DEFENDANT MC ALLISTER: Yes, sir.

"MR. JUNG: And you are Bartley?

"THE DEFENDANT BARTLEY: Yes, sir.

"MR. JUNG: You wish to plead guilty?

"THE COURT: Before the plea is entered, would you discuss the matter with the defendants, Mr. Levin?

"MR. LEVIN: Yes, your Honor.

\* \* \* \* \* \*

"MR. LEVIN: I questioned them both, your Honor. They understand what they have signed and wish to enter pleas of guilty.

"MR. JUNG: Alexander McAllister and Charles M. Bartley as to this accusation, which charges as of the 20th day of April, 1955, in the City of Newark, you did forcibly take from the person of Rosalinz Lowenstein United States currency in the amount of $56.00 and one diamond ring and one wedding ring, in all of the value of $3,906.00, the property of the said Rosalinz Lowenstein by violence and putting the said Rosalinz Lowenstein in fear, you wish to plead guilty?

"Alexander McAllister, is that correct?

"THE DEFENDANT MC ALLISTER: Yes.

"MR. JUNG: And Charles M. Bartley, is that your desire, to plead guilty to that accusation?

"THE DEFENDANT BARTLEY: Yes.

"MR. JUNG: And do you understand, by pleading guilty, you are admitting the truth of this accusation?

"Is that right, Alexander McAllister?

"THE DEFENDANT MC ALLISTER: Yes, sir.

"MR. JUNG: And Charles M. Bartley?

"THE DEFENDANT BARTLEY: Yes, sir.

"MR. JUNG: Do you understand that the Court, when sentence is imposed, can impose sentence in the same manner as though you had been tried by a jury and found guilty?

"Do you understand that, McAllister?

"THE DEFENDANT MC ALLISTER: Yes.

"MR. JUNG: And Bartley?

"THE DEFENDANT BARTLEY: Yes, sir.

"MR. JUNG: Your Honor, the State recommends the acceptance of the pleas.

"THE COURT: The pleas will be entered. Sentence day will be May 11th before Judge Gaulkin."

Judge Giuliano of the Essex County Court conducted a hearing on July 22, 1959, pursuant to McAllister's state habeas corpus contention that his court-appointed counsel had been inadequate. McAllister's claim—court-appointed counsel had informed him, during the short consultation between them, that he was neither his lawyer nor there to help him, and in addition, he was a personal friend of the doctor McAllister and Bartley robbed—was rejected from the bench.

In re Ernst's Petition, 294 F.2d 556, at 558 (3d Cir.1961), stated on the problem of acceptable representation by counsel:

"We approach the problem as did the Court of Appeals for the District of Columbia when it said: '[A]bsence of effective representation of counsel \* \* \* must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and correct it.' Diggs v. Welch, 1945, 80 U.S.App.D.C. 5, 148 F.2d 667, 670."

McAllister has clearly failed to sustain the requisite burden, as demanded by this circuit, to prove a habeas corpus allegation of incompetent counsel. Patently, common sense dictates the conclusion that McAllister's assertions on this point are frivolous.

Accordingly, we must deny petitioner's application for habeas corpus.