62 N.J. Super. 126 (1960)
162 A.2d 293
ALEXANDER McALLISTER, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1960.
Decided June 24, 1960.
*127 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Dino D. Bliablias (assigned counsel) argued the cause for petitioner-appellant.
Mr. C. William Caruso, Special Legal Assistant Prosecutor of Essex County, argued the cause for defendant-respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
*128 The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a dismissal by the Law Division of an application for a writ of habeas corpus after a full hearing on the merits. Plaintiff has been exceptionally well represented by the same assigned counsel below and on this appeal.
Plaintiff pleaded guilty of robbery before Judge Foley in the Essex County Court May 2, 1955. He was sentenced on the plea by Judge Gaulkin May 11, 1955 for from eight to fourteen years in State Prison. The complaint here is that he was inadequately represented by counsel on the arraignment for plea and totally unrepresented at sentencing; and that for either or both of these reasons his conviction was constitutionally defective. Nowhere in petition, testimony or appellate argument, however, does plaintiff assert or imply innocence of the criminal offense to which he pleaded guilty. This was a two-man robbery of the home of a physician in Newark in the course of which the latter's wife and daughter-in-law were roughed up by the defendant, the wife sustaining a fractured shoulder (as appears from the probation file in the matter). Defendant does not appear ever to have been separately charged with and convicted of that assault. He had previously served a jail term on a 1953 conviction for breaking, entering and larceny.
The transcript of the taking of the plea before Judge Foley shows that when he and a co-defendant, Bartley, were brought to the bar, without counsel, and expressed a desire to plead guilty, he directed them "to discuss the matter" with a lawyer then present in court, Mr. Samuel Levin. They conferred with him in another room for a few minutes. Plaintiff testified that Levin at once informed him that he was not his lawyer, he was not there to assist him, and that Dr. Lowenstein, whose home had been robbed, was a personal friend of his. This, he said, abruptly terminated their conference. This highly incredible story was denied by Levin, who testified that while he did refer to the fact that *129 he knew Dr. Lowenstein, he did not make the other comment attributed to him, but that he counseled with plaintiff and informed him he might retract his offer to plead guilty, but that the plaintiff insisted upon pleading guilty. Upon his inquiry, plaintiff informed him that he had a previous court record.
Upon returning to the courtroom the transcript shows the following:
"Mr. Levin: I questioned them both, your Honor. They understand what they have signed and they wish to enter pleas of guilty.
Mr. Jung [assistant prosecutor]: Alexander McAllister and Charles M. Bartley, as to this accusation, which charges as of the 20th day of April, 1955, in the City of Newark, you did forcibly take from the person of Rosaline Lowenstein United States currency in the amount of $56.00 and one diamond ring and one wedding ring, in all of the value of $3,906.00, the property of the said Rosaline Lowenstein by violence and putting the said Rosaline Lowenstein in fear, you wish to plead guilty?
Alexander McAllister, is that correct?
The Defendant McAllister: Yes.

* * * * * * * *
Mr. Jung: And do you understand, by pleading guilty, you are admitting the truth of this accusation?
Is that right, Alexander McAllister?
The Defendant McAllister: Yes, sir.

* * * * * * * *
Mr. Jung: Do you understand that the Court, when sentence is imposed, can impose sentence in the same manner as though you had been tried by a jury and found guilty?
Do you understand that, McAllister?
The Defendant McAllister: Yes.

* * * * * * * *
Mr. Jung: Your Honor, the State recommends the acceptance of the pleas.
The Court: The pleas will be entered. Sentence day will be May 11th before Judge Gaulkin."
Assuming, as we think was justified, that the trial judge accepted Levin's version of the facts, we cannot find that the plea of guilty was entered under circumstances fundamentally unfair or shocking to a sense of justice. See State v. Cynkowski, 10 N.J. 571, 576 (1952). True, the extent of consultation between assigned counsel and prisoner *130 was short and its scope abbreviated, but in view of the nature of the crime, plaintiff's obvious and undenied guilt, his knowledge of court procedures and the implications of the plea evident from his background and testimony (he said he was eager to plead guilty quickly so that the prosecutor should not charge him as a second offender), we cannot say that the representation was so inadequate as to constitute a denial of fair process.
As to the matter of sentencing, a more difficult question presents itself. No suggestion or offer of counsel was made to the plaintiff by the court at sentencing, this not having been the customary practice in our trial courts at the time. See Jenkins v. State, 57 N.J. Super. 93 (App. Div. 1959) (holding that there is a right to counsel at the time of sentence), reversed on other grounds in 32 N.J. 109 (1960), where the Supreme Court affirmed the holding as to the right to counsel at sentencing in principle.
On the sentencing in the present case the prosecutor did not address the court, and plaintiff responded in the negative when asked whether he wished to say anything before imposition of sentence. The court referred to his 1953 sentence aforementioned and to the fact that prior to that time he had been for a time in the Essex County Penitentiary, to which facts plaintiff acceded. The court then stated that the present offense was "vicious, calculated and planned," the court could sentence the prisoner to a maximum of fifteen years, but in view of his plea the sentence would be eight to fourteen years.
In passing on plaintiff's claim that the failure to afford him counsel at the sentencing was fatal to the validity of the proceedings, we must be mindful of the precise views expressed by the Supreme Court in the Jenkins case, supra. The holding there was that there was error by this court in accepting as conclusively demonstrating prejudice a contention by a prisoner, to whom counsel was not made available at sentencing, that if counsel had been provided he could have informed the sentencing judge that his plea of *131 guilt was motivated by promises by a police officer. It was held that the factual issues relative to waiver and prejudice had not been raised or tried (32 N.J., at p. 112) and therefore should not have been dealt with on the appeal. The cause was remanded for a more specific allegation of facts which would negative waiver of counsel and show prejudice by the absence of counsel (Id., at p. 116). The court flatly held that a complaining prisoner must charge and show he "wanted and was denied counsel in connection with sentence or was unaware of his right to such aid" (Id., at p. 113). When the attack is collateral, as here, "a defendant should allege and prove that he did not intelligently and understandingly waive the right to counsel at sentence" (Id., at p. 114). Moreover, he must show prejudice, i.e., a likelihood that under the circumstances his rights could not have been fairly protected without the aid of counsel. Ibid.
In the present case, as in Jenkins, the sentencing judge had before him the probation report. We have examined it. It deals fully with all the pertinent psychological, sociological and punitive considerations bearing upon an appropriate sentence of the prisoner in the interests of society and himself, consistently with the law. As noted in Jenkins, such data is not adversarial in nature; its availability and use by the judge make less acute the problem of fairness in sentencing a prisoner who has no counsel (32 N.J., at pp. 114, 115).
The petition for the writ in this case complained only of lack of counsel at plea, not sentencing. The brief before us was prepared after the Appellate Division decision in Jenkins, but prior to the announcement of the Supreme Court opinion. It takes the position that the lack of counsel at sentencing was per se a denial of plaintiff's constitutional rights. It does not suggest what specific considerations counsel might have advanced at sentencing likely to affect the length of sentence. Nor were any advanced at the argument, when the parties were aware of the Supreme Court decision in Jenkins. Under the circumstances, it would be futile to *132 remand this cause for further proofs. The full merits of the case are exposed before us.
Nothing is presented in this case to show any likelihood that the lack of counsel for plaintiff at sentencing prevented his rights from being fairly protected at that phase of the prosecution.
Judgment affirmed.