98 N.J. Super. 539 (1967)
237 A.2d 907
STATE OF NEW JERSEY, PLAINTIFF,
v.
RONALD KRAMER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 20, 1967.
*540 Mr. Barry H. Evanchick, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Sol Herships for defendant.
JOHN A. ACKERMAN, J.S.C.
This matter is before the court on the petition of defendant for post-conviction relief pursuant to R.R. 3:10A. A hearing was held at which defendant's testimony was taken and transcripts presented of the proceedings relating to the retraction of his pleas of not guilty and the entry of pleas of non vult in 1954 and of the proceedings at his subsequent sentencing.
*541 The pertinent facts may be summarized as follows:
Indictment No. 1040, returned by the Essex County grand jury, charged defendant and two co-defendants with robbery of one Solomen Facher on May 8, 1953, in Newark, New Jersey. Indictment No. 1041 charged defendant and three others with robbery of one Arthur Wolf on July 18, 1953 in Newark. Defendant, with others, was arraigned on both indictments on March 22, 1954 and entered pleas of not guilty. He was represented by assigned counsel Parry, now deceased. On April 26, 1954, at a hearing at which his counsel was present, defendant retracted his pleas of not guilty and pleaded non vult to both indictments. On May 12, 1954 he was sentenced on both indictments. The sentence imposed on indictment No. 1041 was to a term of seven to ten years in State Prison to run consecutively to the term or terms defendant was then serving. (A few weeks prior thereto, defendant had been sentenced to State Prison on indictments arising out of Hudson County.) The sentence on indictment No. 1040 was to a term of seven to ten years in State Prison to run concurrently with the sentence imposed on indictment No. 1041. The transcript of the proceedings at sentencing indicates that defendant was granted the right of allocution, but does not show that his counsel was present.
Defendant's petition for post-conviction relief was verified and filed approximately 12 years after the pleas and sentences challenged. It is not artistically phrased. It states in part:
"Prior to April 26, 1954, defendant was brought before the Essex County Court for Arraignment, Counsel, Mr. William H. Parry, was assigned to represent defendant. Mr. Parry spoke to defendant in the Essex County Prosecutor's Office for less than `five' minutes, at which time Counsel related he spoke with the Prosecutor and their Office would go along with a plea of Non Vult and any punishment inflicted would be in a concurrent nature. Defendant was then returned to the Hudson County Jail at Jersey City, New Jersey, to await further word from Mr. Parry, which never came and Mr. Parry did not visit the Hudson County Jail as he mentioned in the Prosecutor's Office.
*542 April 26, 1954, date of pleading, Counsel reiterated conditions were the same and defendant understood he was retracting his plea of Not Guilty to one of Non Vult but, defendant did not understand the nature of the charge, other than what Counsel had related in our `chat' at the Prosecutor's Office, any punishment inflicted would be of a concurrent nature.
Defendant maintains that his plea of Non Vult was controllingly induced by the promise on the part of Counsel, Mr. Parry, that he had conferred with the Prosecutor and any punishment would be of a concurrent nature, so as not to have been voluntarily made.
The substantial question is that this defendant's plea of Non Vult was induced by promise which deprives it of the character of a voluntary act. The evidence entitled to be found that the plea of Non Vult was improperly induced, in the sense of having been so controlled by the promise of Counsel * * *"
The petition also states:
"In the instant matter Counsel was ineffective at the pleading and failed to appear at the sentencing and this does not meet the requirements of the effective assistance of Counsel."
Defendant therefore claims that (1) the pleas of non vult were not voluntarily and understandingly made because of the alleged promise of his counsel, and (2) his constitutional rights were denied because of lack of counsel at his sentencing.

I
The court finds that defendant's retraction of his pleas of not guilty and his entry of pleas of non vult were understandingly and voluntarily made. At the time of retraction and entry of said pleas, his counsel was present and the transcript of that hearing shows that defendant affirmed that the retraction was made after conferring with counsel, and that he understood that for purposes of sentence his pleas of non vult were the equivalent of pleas of guilty. No promise as to sentence was mentioned. Only a few weeks prior thereto he had gone through the process of retracting not guilty pleas and entry of pleas of non vult in Hudson County. At the post conviction hearing he expressly disavowed any claim that there was a "deal" or plea bargain with the prosecutor. He testified that Mr. Parry told *543 him that he was going to get "concurrent sentences" and that he "assumed" that Mr. Parry had talked to the prosecutor. He admitted that the only reason he filed his post-conviction application was because he was unhappy with his sentences and he does not assert that he was innocent of the offenses charged. The sentences complained of were in fact concurrent with each other, and he did not protest at sentencing that the sentences imposed violated any promise or understanding that the Essex County sentences would be concurrent with the Hudson County sentences.
The defendant has the burden of showing by a preponderance of the evidence that his pleas were not understandingly and voluntarily made and must make a strict showing with a solid affirmative basis for the relief sought. State v. Daniels, 38 N.J. 242 (1962), certiorari denied 374 U.S. 837, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1962); State v. Moe, 50 N.J. 386 (1967). The court was not impressed with the truth of his testimony that he had relied upon any promise made by counsel in entering his pleas. The court finds that he did not rely on any promise made as to sentence, and the testimony clearly does not establish that any promise was made by anyone. His convictions stand. State v. Miller, 16 N.J. Super. 251 (App. Div. 1951) certiorari denied, 342 U.S. 934, 72 S.Ct. 379, 96 L.Ed. 695 (1952); State v. Pometti, 12 N.J. 446 (1953), affirming 23 N.J. Super. 516 (App. Div. 1952); see State v. Ashby, 43 N.J. 273 (1964), reversing 81 N.J. Super. 350 (App. Div. 1963); see State v. Taylor, 49 N.J. 440, 455 (1967).

II
Defendant claims that his counsel was not present at sentencing. The prosecutor conceded this to be the fact at the post-conviction relief hearing, apparently because there is nothing in the record to show to the contrary. The transcript of the proceedings at sentencing does not list counsel as being present and does not record his having spoken on *544 behalf of defendant. Mr. Parry is now dead and cannot testify that he was present at sentencing, or that defendant waived benefit of counsel at sentencing, or that he appeared before the sentencing judge on defendant's behalf at some other time. See State v. Rose, 40 N.J. Super. 40, 52 (Cty. Ct. 1956), affirmed 41 N.J. Super. 434 (App. Div. 1956). The clerk's minutes merely record the sentences, and the sentence lists for 1954 have been destroyed. There are no avenues for further inquiry that might reasonably be expected to shed light on the question as to whether Mr. Parry was in fact present at sentencing. See Janiec v. State, 87 N.J. Super. 76 (App. Div. 1965), remanding for further hearing 85 N.J. Super. 68 (Law Div. 1964); State v. Davis, 92 N.J. Super. 289 (App. Div. 1966), remanding for further hearing, 88 N.J. Super. 528 (Law Div. 1965). It must therefore be concluded that defendant was not represented by counsel at his sentencing.
For many years, the right of a defendant to counsel, including such assistance at the time of sentence, has been recognized and enforced. In re Sabongy, 18 N.J. Super. 334 (Cty. Ct. 1952). The question arises, however, as to what the consequences are when counsel is not present at sentencing and the matter is raised by collateral attack, long after the time for appeal has expired. In State v. Jenkins, 32 N.J. 109 (1960), our Supreme Court, although conceding that a defendant is entitled to counsel at sentencing unless that right has been waived, held that the burden is upon a defendant making a collateral attack on his sentence by application for post-conviction relief to show a likelihood that his rights were not fairly protected without counsel and that he suffered prejudice therefrom. As to the manner of determining the likelihood of prejudice from the absence of counsel at sentencing, the court said:
"* * * Whether that likelihood exists must be determined in good part by measuring what is offered in attacking the sentence against what the probation report revealed." (at p. 115)
*545 In accordance with Jenkins and other decisions of our courts cited above, this court has reviewed the presentence report prepared by the Probation Office for the trial judge who imposed sentence upon the defendant. Were the court to apply the Jenkins test in this case, it would rule that it is not likely that defendant suffered prejudice. Defendant has not established to the satisfaction of the court that he was relying on any promise, let alone a promise or plea bargain made by the prosecutor to recommend sentences concurrent with the Hudson County sentences. As in Jenkins, the prosecutor did not speak at defendant's sentencing and there was no disparity of oral advocacy. The presentence report is full and complete. It contains information concerning every aspect of defendant's family and personal life and deals with all the pertinent psychological and sociological factors bearing upon an appropriate sentence which would be fair to defendant and to society and consistent with law. Detailed admissions of defendant and the statements of accomplices and of victims with respect to the crimes involved are set forth so that the full nature of the offenses are presented. The data is not adversarial in nature. The court is of the opinion that the sentencing judge relied heavily on the presentence report in sentencing defendant, see State v. Jenkins, supra; Williams v. People, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), rehearing denied 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760 (1949); Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and that he would have meted out the same sentence to defendant, regardless of the appearance of his counsel at sentence and regardless of the assertion by counsel in his behalf of the matters which it is now argued should have been advanced to the sentencing court. McAllister v. State, 62 N.J. Super. 126 (App. Div. 1960) certification denied (unreported 1960), certiorari denied, 368 U.S. 847, 82 S.Ct. 67, 7 L.Ed.2d 40 (1961); Petition of McAllister, 208 F. Supp. 636 (D.N.J. 1962).
*546 However, Jenkins and McAllister were decided during the "reign" of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). In that case the Supreme Court of the United States held that the Fourteenth Amendment did not incorporate, as such, the specific guarantees of the Sixth Amendment, which applies by its terms only to trials in the federal courts, and concluded that the right to counsel in noncapital cases in state courts was not absolute and unqualified, but that the denial of counsel might, "in certain circumstances" in a given case, deprive a litigant of due process in violation of the Fourteenth Amendment.
In contrast, the contemporaneous cases construing the guarantees provided by the Sixth Amendment recognized that the right to counsel in criminal cases in the federal courts was unqualified. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the oft-cited case of Martin v. United States, 182 F.2d 225, 20 A.L.R.2d 1236 (5 Cir. 1950), certiorari denied 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950), the court held that, while a defendant in a criminal case in a federal court is entitled to counsel under the Sixth Amendment at every stage of the proceeding, recognition of that principle does not require a court to upset a conviction upon proof that at a particular stage of the proceeding counsel may not have been present. Holding that a great deal depends upon the nature of the "stage of the proceeding" from which counsel is absent, it recognized that it may be of such minor legal significance as to refute even a possibility of injury and that an inconsequential impingement of the constitutional right is merely error without injury. The court specifically ruled, however, that sentencing is a critical stage of a criminal proceeding and that absence of counsel at sentencing is presumably prejudicial and a violation of the constitutional guarantee. In holding that the defendant was entitled to be resentenced, the court said:
*547 "The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendants' past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation, or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial." (at p. 227; emphasis added)
In the 21 years following the decision in Betts, its rule was gradually eroded by subsequent decisions of the Supreme Court of the United States. In Townsend v. Burke, 334 U.S. 736, 739, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), the court, although adhering to the rule in Betts, upset a conviction where the accused was not provided counsel and ruled that "the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced, does make out a case of violation of due process." In Hamilton v. State of Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), decided after the Jenkins case, the court considered a claim by an accused that he had been denied due process because, although he had a right under state law to be represented by counsel at arraignment in a capital case, that right had been denied to him. The state claimed that he was not entitled to relief because there had been no showing that he had been disadvantaged in any way by the absence of counsel when he pleaded not guilty at his arraignment. In setting aside the conviction the court held that arraignment in Alabama is a "critical stage in a criminal proceeding" and that "we do not stop to consider whether prejudice resulted." In Chewning v. Cunningham, 368 U.S. 443, 447, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962), also decided after Jenkins, the court upset a conviction under the Virginia *548 habitual criminal statute where the accused had requested and was denied counsel. The court did not inquire as to whether actual prejudice to the accused resulted from lack of counsel, noting that because of the nature of the proceeding "the potential prejudice resulting from the absence of counsel [was] so great * * *" See also Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Ferguson v. State of Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); Hall and Kasimar, Modern Criminal Procedure, pp. 269-281 (1965).
Finally, in the landmark decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), decided three years after Jenkins, the Supreme Court of the United States expressly overruled the Betts case. Mr. Justice Black, writing for the court held that the unqualified right to counsel prescribed by the Sixth Amendment was incorporated into the Fourteenth Amendment and was applicable in noncapital cases as well as in capital cases in the state courts. He said:
"We accept Betts v. Brady's assumption, based as it was on our prior cases, that a provision of the Bill of Rights which is `fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment. We think the Court in Betts was wrong, however, in concluding that the Sixth Amendment's guarantee of counsel is not one of these fundamental rights * * *" (83 S.Ct., at p. 795)
The concurring opinion of Mr. Justice Harlan is illuminating as to the scope and meaning of the Court's decision. He stated:
"In noncapital cases, the `special circumstances' rule has continued to exist in form while its substance has been substantially and steadily eroded. In the first decade after Betts, there were cases in which the Court found special circumstances to be lacking, but usually by a sharply divided vote. However, no such decision has been cited to us, and I have found none, after Quicksall v. People of State of Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188 decided in 1950. At the same time, there have been not a few cases in which special circumstances were found in little or nothing more than the *549 `complexity' of the legal questions presented, although those questions were often of only routine difficulty. The Court has come to recognize, in other words, that the mere existence of a serious criminal charge constituted in itself special circumstances requiring the services of counsel at trial. In truth the Betts v. Brady rule is no longer a reality.
This evolution, however, appears not to have been fully recognized by many state courts, in this instance charged with the front-line responsibility for the enforcement of constitutional rights. To continue a rule which is honored by this Court only with lip service is not a healthy thing and in the long run will do disservice to the federal system.
The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in noncapital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence. (Whether the rule should extend to all criminal cases need not now be decided.) This indeed does no more than to make explicit something that has long since been foreshadowed in our decisions." (Ibid., at p. 800)
Although Gideon did not specifically deal with a case in which counsel was lacking only at sentencing, after guilt had been determined, it is clear that the court unanimously held that an accused has an unqualified constitutional right under the Fourteenth Amendment, unless it is waived, to have the assistance of counsel at every critical stage of a state court criminal proceeding which involves a possibility of a substantial deprivation of his liberty and that, where counsel is lacking at a critical stage, proof of special circumstances or prejudice is not necessary in order that the accused be entitled to enforcement of his rights. Any initial doubts as to the retroactive application of Gideon have been resolved and it is now absolutely clear that it is retroactively applied. Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964); Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963); Palumbo v. State of New Jersey, 334 F.2d 524 (3 Cir. 1964); see State v. Johnson, 43 N.J. 572, 581, 584 (1965), affirmed, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); rehearing denied 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121 (1966).
*550 The Supreme Court of New Jersey has not had occasion since the decision in Gideon to consider the rule laid down in Jenkins. There have been no reported cases in this State since Gideon which squarely deal with the consequences of lack of counsel at sentencing, as distinguished from lack of counsel during an entire criminal proceeding or at a crucial point during pretrial or trial proceedings which bear upon the determination of guilt, where the attack is a collateral one upon a sentence imposed before the decision in Gideon. However, our highest court has followed the precepts of Gideon and has recognized the changes which it wrought. See State v. Loray, 46 N.J. 179, 183, 189 (1965); State v. Vogel, 45 N.J. 400, 404 (1965); State v. Dennis, 43 N.J. 418, 427 (1964). There is every indication that, in accordance with the plain teachings of Gideon, our courts will hold that the absence of counsel at sentencing in a pre-Gideon case is the deprivation of an absolute constitutional right unless waived, and that enforcement of that constitutional right would not be made dependent upon a showing of prejudice or proof of special circumstances. See State v. Louis, 97 N.J. Super. 35 (App. Div. 1967); State v. Ebinger, 97 N.J. Super. 23 (App. Div. 1967); State v. Davis, supra; State v. Laird, 85 N.J. Super. 170 (App. Div. 1964); State v. Kirkland, 82 N.J. Super. 409 (App. Div. 1964); Janiec v. State, supra; State v. Ercolino, 65 N.J. Super. 20 (App. Div. 1961); Jenkins v. State, 57 N.J. Super. 93 (App. Div. 1959) reversed and remanded 32 N.J. 109 (1960); State v. Williams, 97 N.J. Super. 573 (Cty. Ct. 1967).
Courts of our sister states and lower federal courts, faced with the problem in the years immediately following the Gideon decision, have applied the rule of that case retroactively in cases involving collateral attacks upon sentences imposed prior to Gideon, where the only claim was that the accused lacked counsel at sentencing. In such cases, the sentences have been set aside without the necessity of showing actual prejudice, and the accused has been given the right to be resentenced. The courts of New York and Pennsylvania *551 have reversed prior rulings, similar to Jenkins, which held that relief could be granted only if a likelihood of prejudice were shown. Compare People v. Hasenstab, 283 App. Div. 433, 128 N.Y.S.2d 388 (App. Div. 1954), with People v. Callahan, 19 A.D.2d 585, 240 N.Y.S.2d 460 (App. Div. 1963); People v. Hasenstab, 45 Misc.2d 105, 255 N.Y.S.2d 979 (Sup. Ct. 1964); and People v. Sykes, 23 A.D.2d 701, 258 N.Y.S.2d 275 (App. Div. 1965). Compare Commonwealth v. Polens, 327 Pa. 554, 194 A. 652 (Sup. Ct. 1937), with Commonwealth ex rel. Bair v. Russell, 203 Pa. Super. 311, 201 A.2d 246 (Super. Ct. 1964); Commonwealth ex rel. Goodfellow v. Rundle, 415 Pa. 528, 204 A.2d 446 (Sup. Ct. 1964); Commonwealth ex rel. Remeriez v. Maroney, 415 Pa. 534, 204 A.2d 450 (Sup. Ct. 1964); Commonwealth ex rel. Miller v. Myers, 206 Pa. Super. 84, 211 A.2d 87 (Super. Ct. 1965). See also Consiglio v. Warden, State Prison, 153 Conn. 673, 220 A.2d 269 (Sup. Ct. Err. 1966); Gebhart v. Gladden, 243 Or. 145, 412 P.2d 29 (1966); King v. State, 157 So.2d 440 (Fla. Ct. App. 1963) habeas corpus denied, 169 So.2d 383 (Sup. Ct. Fla. 1964); Evans v. State, 163 So.2d 520 (Fla. Ct. App. 1964); Reader v. State, 168 So.2d 557 (Fla. Ct. App. 1964); Trimble v. State, 170 So.2d 452 (Fla. Ct. App. 1965); Hall v. Wainwright, 263 F. Supp. 727 (N.D. Fla. 1967); see Palumbo v. New Jersey, 334 F.2d 524 (3 Cir. 1964); cf. Vitorates v. Maxwell, 350 F.2d 217, 223 (6 Cir. 1965); Boggess v. Boles, 251 F. Supp. 689 (N.D.W. Va. 1966).
As the years have passed the Supreme Court of the United States has reaffirmed and extended the rule of the Gideon case and of Hamilton v. State of Alabama, supra. In White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, 194 (1963), the court held that the denial of counsel at a pre-Gideon preliminary hearing in a state court proceeding was a violation of the accused's right to due process, holding that that stage of proceeding was "critical" and that "We repeat what we said in Hamilton *552 v. State of Alabama, supra (368 U.S. at 55, 82 S.Ct. at 159) that we do not stop to determine whether prejudice resulted." See also Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.ed.2d 493 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.ed.2d 1149 (1967).
Finally, four years after Gideon, the court has decided a case which dispels any real doubt on the point in question. In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.ed.2d 336 (1967), it dealt in a consolidated appeal with two cases arising in the State of Washington. Both dealt with the effect of lack of counsel at sentencing in state court proceedings, one requiring a retroactive application and the other a prospective application of Gideon. Both cases involved collateral attacks on the sentences by applications for post-conviction relief. In the case involving Mempa, a sentence of probation imposed in 1959 was revoked in 1959 and a new sentence imposed without counsel, both proceedings being prior to Gideon. The court held that the revocation and new sentence were invalid and could be collaterally attacked in 1965. In the case involving Walkling, it held that a sentence of probation imposed in 1962 before Gideon, revoked in 1964 after Gideon with new sentence imposed without counsel, could be collaterally attacked in 1966. The court made no distinction between the retroactive and prospective applications of the Gideon rule. After referring to certain pre-Gideon decisions (Townsend v. Burke; Moore v. Michigan and Hamilton v. State of Alabama, supra; and Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.ed. 77 (1955) rehearing denied, 350 U.S. 943, 76 S.Ct. 297, 100 L.ed. 822 (1956)) and one post-Gideon decision (White v. Maryland, supra), Mr. Justice Marshall, writing for a unanimous court, said:
"All the foregoing cases, with the exception of White, were decided during the reign of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), and accordingly relied on various `special *553 circumstances' to make the right to counsel applicable. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), however, Betts was overruled and this Court held that the Sixth Amendment as applied through the Due Process Clause of the Fourteenth Amendment was applicable to the States and, accordingly, that there was an absolute right to appointment of counsel in felony cases.
There was no occasion in Gideon to enumerate the various stages in a criminal proceeding at which counsel was required, but Townsend, Moore, and Hamilton, when the Betts requirement of special circumstances is stripped away by Gideon, clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected. In particular, Townsend v. Burke, supra, illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to counsel applies at sentencing. Many lower courts have concluded that the Sixth Amendment right to counsel extends to sentencing in federal cases.[*]" (88 S.Ct., at p. 256)
See also Burgett v. State of Texas, supra.
This court is compelled to conclude that, there being no waiver of counsel, the sentences imposed upon defendant in 1954 in the absence of his counsel were not constitutionally valid under the Fourteenth Amendment. He need not show prejudice or other special circumstances to be entitled to the relief of resentencing.
Although his convictions stand, the defendant is entitled to be brought before the court for imposition of new sentences. He is entitled to the full aid and assistance of counsel. An order will be entered that defendant be brought before the court for resentencing and that the Probation Department of Essex County prepare, prior to the hearing, a current presentence investigation report for the assistance of the court.
NOTES
[*] Citing in a footnote, among other cases, Martin v. United States, supra.