John Patrick TULLY, Petitioner,

v.

Edward SCHEU, United States Marshal for the District of New Jersey, and William F. Hyland, Attorney General of New Jersey, Respondents.

Civ. A. No. 77–2551.

United States District Court,
D. New Jersey.

March 18, 1980.

Donald I. Bryan, Jr., Mount Holly, N. J., Richard A. Sprague, Michael L. Goldberg, Sprague, Goldberg & Rubenstone, Philadelphia, Pa., for petitioner.

Rocky L. Peterson, John J. Sheehy, Deputy Attys. Gen., State of N. J., Princeton, N. J., for respondents.

OPINION

DEBEVOISE, District Judge.

This matter is before the Court upon the motion of petitioner, John Patrick Tully, for an order granting his application for a writ of habeas corpus. On September 26, 1979 the cause was remanded to this Court by the Court of Appeals for the Third Circuit with a direction to grant the writ "unless the State of New Jersey affords [Tully] a meaningful sentence reduction hearing within a reasonable time". After the remand, proceedings were held in the New Jersey courts, but it is my opinion that they did not constitute a meaningful sentence reduction hearing as contemplated by the Court of Appeals. It is also my opinion that a reasonable time has elapsed since September 26, 1979. Consequently Tully's motion will be granted and a writ of habeas corpus will issue.

## I. *The Facts*

Tully is presently incarcerated under an assumed name at an undisclosed location under the supervision of the United States Marshal's Service and the Witness Protection Program of the United States Department of Justice. He filed a petition for a writ of habeas corpus in this Court on December 13, 1977, alleging that the State of New Jersey had unconstitutionally denied him his right under New Jersey law to a sentence reduction hearing.

The sentence of which Tully complains was imposed on July 30, 1975 by the Honorable W. Thomas McGann, who was then a Judge of the Superior Court of New Jersey and who is now retired. Judge McGann was informed that Tully had entered into a plea agreement with the State that his sentence of imprisonment would not exceed twenty (20) years. Sentence (for four counts of murder and various other heinous criminal charges) was entered for an aggregate term of twelve (12) to fifteen (15) years imprisonment and was to run concurrently with a sentence of twelve (12) years imposed the previous day by the United States District Court on unrelated charges.

On August 8, 1975, Tully moved in a timely manner for a reduction of sentence pursuant to N.J.Ct. Rule 3:21–10, basing his motion upon his contention that the State had breached a plea bargain agreement. The history of Tully's sentence reduction application is set forth in the opinion of the Court of Appeals, *Tully v. Scheu*, 607 F.2d 31 (3d Cir. 1979), and will not be repeated at length here. Suffice it to say: By reason of the fact that Tully's then attorney could no longer represent him because his testimony would be required at the hearing, Judge McGann continued the hearing to a date long after the expiration of the 75-day period within which New Jersey's Court Rules require disposition of a sentence reduction application. When the matter finally came on for hearing on May 24, 1976, the State moved to dismiss the proceeding on the ground that the applicable Court Rule precluded acting on the motion after the lapse of seventy-five (75) days. Judge

McGann denied the motion, but he was reversed by the Appellate Division of the Superior Court which, in turn, was affirmed by the New Jersey Supreme Court.

Thereafter, Tully's petition for habeas corpus was filed in the United States District Court.

This Court denied Tully's application. On the appeal from the order of denial the Court of Appeals reversed. It stated in its opinion: "New Jersey could not require Tully either to proceed with his original counsel, and thus be deprived of the lawyer's testimony concerning the facts of the plea negotiations, or to forgo counsel and proceed *pro se*, with his former attorney participating solely as a witness. . . . [W]e are persuaded that the effect of the New Jersey appellate decision that precluded the sentencing judge from deciding appellant's timely motion was to interfere with an individual right deemed paramount to state interests: the constitutional right to counsel at the sentence reduction hearing." 607 F.2d at 36.

Rather than directing that the writ of habeas corpus be granted forthwith, the Court of Appeals gave the State an opportunity to provide Tully with the equivalent of what he would have received had Judge McGann been permitted to proceed, namely, "a meaningful sentence reduction hearing". It was required that such hearing be held "within a reasonable time".

The mandate of the Court of Appeals was entered on September 26, 1979. Thereafter the State of New Jersey scheduled a new sentence reduction hearing for Tully, to be held on December 18, 1979.

On December 4, 1979, Tully filed a motion in this Court for an order granting his application for a writ of habeas corpus on the grounds that no sentence reduction hearing before the State court could be meaningful because:

11. Judge McGann retired from the bench on October 20, 1976, and, through no fault of petitioner's, is no longer available to preside at and to conclude petitioner's sentence reduction hearing;

12. The State of New Jersey's abrupt and unconstitutional termination of his original sentence reduction hearing has foreclosed petitioner through no fault of his own from his previous opportunity to benefit from any doubts or second thoughts entertained by the judge who had accepted petitioner's guilty plea and who had sentenced petitioner . . . . Moreover, the State's action has caused petitioner to irrevocably lose any benefit which once might have been his from Judge McGann's personal reaction to the knowledge that he had been deceived by the government's misrepresentations to him as to the terms of the petitioner's plea bargain. . . .

13. Furthermore, the State of New Jersey terminated petitioner's original sentence reduction hearing just at the point at which petitioner was developing serious contradictions and inconsistencies in the government's testimony. Consequently, where previously petitioner could have offered as proof of his case not only his own testimony and that of his then attorney, Michael Marucci, but in addition, a seriously discredited government account of the negotiations and the terms of petitioner's plea bargain, that quality of proof is now lost to petitioner. . . .

Tully sought from this Court a stay of the December 18, 1979 hearing scheduled before the State court. That application was heard and denied on December 7, 1979 for the reason that the State court should at least be given the opportunity to conduct a meaningful hearing and that it could not be concluded as a matter of law that the unavailability of Judge McGann made it impossible to conduct such a hearing.

Before describing the hearings which were held before the State court, it would be useful to set forth the essential facts which Tully had sought to develop before Judge McGann and which (together with pertinent subsequent events) were to be presented at the renewed hearing.

In 1975 Tully was one of a number of members of the so-called "Campisi Family", who had been charged with an appalling series of crimes in a multi-count indictment. On January 7, 1975, Tully entered pleas of guilty and *non vult*. According to Tully, these pleas were the result of a plea bargain negotiated and arranged between the State, represented by two deputy attorney generals, and himself, represented by an assistant federal public defender. Also, according to Tully, he was assured that if the remaining defendants entered into a plea bargain they would be allowed to receive no less than a term of thirty (30) years and that, in any event, Tully would receive the lightest sentence of all the other defendants. On the basis of that agreement, Tully entered his plea and agreed to testify against the other defendants.

Tully cooperated with the State in its criminal proceedings against the other members of the Campisi family, who were the ringleaders in the various criminal activities which were the subject of the indictment, and he testified against two other defendants (Scocozzi and Stagnetta) when asked by the State to do so, which was not a part of his plea bargain.

It seems reasonable to conclude that Tully's willingness to testify against the ringleaders of the Campisi family was a major, if not decisive, factor in their agreement to plead guilty to the charges against them.

After their pleas of guilty, and upon the recommendation of the State, the members of the Campisi family received strikingly short prison sentences varying from three to twelve years, with one defendant receiving twenty-five (25) years. The Campisi defendant who received the twenty-five year sentence had just recently been sentenced by another State judge to a period of incarceration of twenty (20) years for an unrelated matter, and Judge McGann's sentence was concurrent with the other sentence.

In addition to receiving these extraordinarily lenient sentences, each of the Campisi defendants received a concurrent federal sentence, varying in terms of years as to each individual defendant but with no federal sentences exceeding the individual's State sentence.

Thus, if Tully's contentions as to the terms of his plea bargain agreement are true, he should have received a sentence of slightly less than three years, so that it would have been lighter than that of any other defendant.

The reasons for Tully's concern that he be released from jail before any of his erstwhile confederates are not hard to fathom. They involve more than simply a normal desire for early release. Once he broke with the other members of the crime family and commenced cooperating with the State he irretrievably and drastically changed his situation. Thereafter he could expect forever to be the target of vengeance, an expectation which subsequent events suggest is fully justified. While in custody there has been at least one attempt to kill him. It would have been important to him not to be confined in prison at a time when his former associates in crime were at large and more readily able to plot his death.

If, in fact, Tully had been assured by the State that no other defendant would receive a term of less than thirty (30) years as a result of a plea bargain, one can readily understand his dismay when, as events turned out, their sentences ranged down to three years, and his was fifteen (15) years. As a result, at the time of Tully's sentence reduction hearing only, one of the Campisi family defendants remained incarcerated, and that defendant was already serving a twenty (20) year sentence for an unrelated crime. Tully has now served more than five years of his State sentence. He is currently serving a twelve-year federal sentence and was denied parole in December, 1979 based, in part, upon his fifteen-year State sentence. When Tully does receive a federal parole, or at the termination of his federal sentence, he will be returned to the New Jersey prison system where he will face either grave danger to his life or the overall conditions which prevail in the pro-

tective custody facilities in New Jersey prisons.[1]

Tully first appeared before the State court for a renewed sentence reduction hearing on December 18, 1979. At the outset of the hearing his attorneys requested that steps be taken pursuant to *N.J.S.A.* 43:6A–13 to request the New Jersey Supreme Court to recall Judge McGann from retirement so that he, as the sentencing judge, could conduct the hearing. When the request was made, the State court judge recessed and personally communicated with Judge McGann. Judge McGann informed him that there were several reasons why he would prefer not to be recalled but that if he were directed to conduct the hearing he would do so.

Thereafter, the State court judge communicated with the Chief Justice of the New Jersey Supreme Court, who expressed the view that it would be both unnecessary and inappropriate to recall Judge McGann. After his retirement, Judge McGann had entered the practice of law and had become active in politics, all of which, in the opinion of the Chief Justice, made it inappropriate for him to act as a judge and served to distinguish the situation from the usual retired judge who is recalled for a single case.

It was the hearing court's conclusion that those circumstances made it undesirable to seek Judge McGann's recall and that another judge could adequately hear the evidence and arguments and render a decision. It therefore denied Tully's initial application and proceeded to hear the matter itself.[2]

The Court decided to bifurcate the hearing. It undertook, on December 18, 1979, to consider those matters which were "addressed to the Court's discretion". This involved Tully's contention that it was patently unfair for the unrepentant, non-cooperating ringleaders in the criminal activities

1. The constitutional ramifications of these conditions in a Pennsylvania prison are the subject of recent litigation, *Wojtczak v. Cuyler*, 480 F.Supp. 1288 (E.D.Pa.1979). Related issues are presently before this Court, *Calloway v. Fauver*, Docket No. 79–2187.

2. Tully's motion to recall Judge McGann was renewed and again denied at the second stage of the hearings in this matter held on January 21, 1980.

which were the subject of the indictment to be walking the streets at liberty while he, who had cooperated in every way with the government in its efforts to convict the ringleaders, was confined in jail for a fifteen-year term. The Court deferred to a later date consideration of those matters which would require "an evidentiary hearing on the allegation of the defendant that a plea agreement reached between the defendant and the State prior to the imposition of sentence was violated by the sentence". (Tr., Dec. 18, 1979, p. 3.)

Tully's attorneys were able to present at length their contention that, under the circumstances, the great disparity between Tully's sentence and the sentences of the Campisi family defendants should move the Court to exercise its discretion to reduce Tully's sentence. The Court stated that it exercised its discretion "on the assumption for this purpose that [Tully] was sentenced pursuant to the plea bargain as reported [to Judge McGann at the time of sentencing]". (Tr., Dec. 18, 1979, p. 37.)

In its opinion delivered from the bench the Court reviewed in detail the factual background of the application. The Court noted that the plea agreement with Tully which was reported to Judge McGann called for incarceration for a period not to exceed twenty (20) years. It concluded that in light of the terrible crimes which Tully admittedly had committed the sentence of twelve (12) to fifteen (15) years imposed by Judge McGann was "extremely lenient". (Tr., Dec. 18, 1979, p. 59.) With respect to the disparity of sentences, the Court concluded that Tully had not shown a grievous inequity which would tend to destroy a prisoner's sense of having been justly dealt with or which would destroy the public confidence in even-handed justice, *State v. Hicks*, 54 N.J. 390, 255 A.2d 264 (1969). It found that since Tully's State sentence of fifteen (15) years ran concurrently with his federal sentence of twelve (12) years it was,

in effect, a three-year sentence for the State crimes and thus more lenient than that of the Campisi defendants.[3] Exercising its discretion, the State court denied Tully's motion for reduction of sentence based on disparity. It then set January 21, 1980 as the date for a hearing on Tully's claim that the State had violated its plea agreement with him.

Prior to January 21, 1980 the State moved to dismiss Tully's motion for a reduction of sentence. The rationale of the State's motion was: (i) The December 18, 1979 proceeding provided Tully with his meaningful sentence reduction hearing pursuant to N.J.Ct. Rule 3:21–10; the Court had exercised its discretion and denied Tully's application, thus ending the matter. (ii) A Rule 3:21–10 proceeding is not a proper vehicle for an evidentiary hearing upon the validity of a sentence; that is the proper subject of post-conviction relief proceedings under N.J.Ct. Rule 3:22. (iii) Tully's Rule 3:21–10 motion for sentence reduction having been disposed of on December 18, 1979, there was nothing left to decide; if he wanted to raise the issue of the State's violation of a plea agreement he should do so by new proceedings under Rule 3:22.

At the January 21, 1980 hearing before the State court, Tully's attorneys were prepared to go forward with testimony and other evidence. The State pressed its motion to dismiss. It is apparent from a reading of the transcript of that proceeding that the Court as well as the State had difficulty in accepting Tully's position that he was not asking the Court to vacate the *conviction* by reason of the failure of the State to observe a plea agreement and that Tully was simply asking the Court to take the State's breach of the plea agreement into account when it reconsidered Tully's *sentence.* When Tully's attorneys attempted to explain their position to the Court the Court stated: "I don't believe the State's motion contemplat-

---

**3.** At the time it rendered its opinion, the State court apparently was unaware that the Campisi family defendants, like Tully, were given federal sentences for unrelated crimes and that those sentences, like Tully's, were to run con-

currently with their State sentences. (Tr., Dec. 18, 1979, pp. 64–69.) This makes it difficult to agree with the conclusion that in fact there was no disparity.

ed what you are saying now at all, nor did I. I assumed your motion was an attack on the legitimacy, the constitutionality, the legality of the *conviction* proceedings and not the *sentence*." (Tr., Jan. 21, 1980, p. 17.) (Emphasis supplied.)

After Tully's attorneys explained their position (a position which they have taken consistently since October 9, 1975, when they first appeared before Judge McGann), the State court announced that it could avoid a two or three week hearing on Tully's contention that the State had violated its plea agreement by proceeding on the assumption that there was in fact a promise made by the State to Tully that the aggregate sentence imposed upon him would be less than the aggregate sentences imposed upon the Campisi family defendants.[4]

Making that assumption, the State court ruled that Tully would be entitled to proceed under N.J.Ct. Rule 3:22 to have his conviction vacated and a not guilty plea entered as to each of the five counts to which he pled guilty or *non vult*, and that the case would then be in a position for a trial on the merits. The Court offered to turn the proceedings into one for post-conviction relief, if Tully so desired. The Court, however, also ruled that if Tully did not wish to proceed in that manner the Court would not exercise its discretion and impose a sentence consistent with the assumed plea bargain, "a sentence which would be so entirely unjustified, so entirely inconsistent with the gravity of the offenses to which he has recorded his admission of guilt so as to make a mockery of this Court in the imposition of such a sentence". (Tr., Jan. 21, 1980, at 48, 49.)

The State court thereupon denied Tully's motion for a reduction of sentence, and Tully moved in this Court for an order granting his application for a writ of habeas corpus. If the proceedings before the State court did not constitute a meaningful sentence reduction hearing within the

meaning of the judgment of the Court of Appeals the writ must issue.

## II. *The Law*

The State urges as a ground for denying Tully's motion the fact that Tully has not completed the appeal process from the State court's order. Such an appeal is not required to give this Court jurisdiction of the matter, as the proceeding has been properly in this Court since December 13, 1977, when Tully's habeas corpus petition was filed. Further, the Court of Appeals specified in its judgment that the writ should be granted if the meaningful sentence reduction hearing were not held "within a reasonable time". If the New Jersey appellate process were pursued and if Tully were ultimately able to secure a new hearing, it would not qualify as being within a reasonable time. It is my opinion that the Court of Appeals intended to give the State courts a second but not a third bite at the apple.

█ Tully urges that no sentence reduction hearing not held by Judge McGann can be meaningful, as only he would know the rationale for the original sentence and have the familiarity with all of the earlier proceedings required for a proper exercise of discretion. I cannot agree with this position. It happens on occasion that a sentencing judge will die or retire between the date of sentencing and the hearing on an application for sentence reduction. On those occasions a fair-minded judge can surely put himself in the shoes of the sentencing judge and pass upon the application, *see United States v. Dobson*, 609 F.2d 840 (5th Cir. 1980), n. 1, at 843.

█ The reasons which the Chief Justice of New Jersey advanced for not recalling Judge McGann were sound ones, and it would have been inappropriate under the circumstances for Judge McGann to have resumed a judicial role. Even though the

---

**4.** Prior to stating the assumption on which it intended to proceed (Tr., Jan. 21, 1980, p. 27), the Court asserted: "I need an assertion from the Defendant as to what it is he would establish by evidence; and on the basis of that, I

would not grant the relief sought; that even if that is established, there is no reason for us to take testimony at length." (Tr., Jan. 21, 1980, p. 22.)

State, by terminating the earlier sentence reduction proceeding prematurely, brought about the situation which made it necessary to proceed before a judge other than Judge McGann, it would not have been impossible to obtain a meaningful hearing before another judge.

However, I have concluded that the actual hearing granted Tully in the State court was not meaningful for other reasons.

Tully sought the reconsidered leniency of the sentencing court under N.J.Ct. Rule 3:21–10. In order to persuade the Court to exercise favorably the broad discretion which it has under that rule, Tully wished to show the inherent unfairness of the discrepancies between his sentence and the sentences of the members of the Campisi family. He also wished to show by testimony that the State had agreed that no member of the Campisi family would be allowed to plead for less than thirty (30) years, and that, therefore, his sentence would be for less than the sentences of any member of the Campisi family. It was obvious that the sentencing judge, Judge McGann, considered this testimony concerning the alleged plea agreement to be a significant factor in the exercise of his discretion, because he was in the process of holding extensive hearings on the issue at the time the hearings were terminated. Tully had proceeded, as he was entitled to do under New Jersey law, to raise these matters in a sentence reduction proceeding and not on a post-conviction relief application.

■ A proceeding under N.J.Ct. Rule 3:22 for post-conviction relief is markedly different from a sentence reduction hearing. As the Court of Appeals noted:

. . . Post-conviction relief hearings are significantly different from sentence reduction hearings. At a post-conviction hearing, the defendant has the burden of proving a change in his situation that merits relief and is limited as to the grounds that may be presented to the hearing judge. To require Tully to pursue post-conviction relief would subject him to substantial burdens which he will not face at a sentence reduction hearing.

In *State v. Kramer,* 98 N.J.Super. 539, 237 A.2d 907, 909–10 (1967), the court explained that a 'defendant [seeking post-conviction relief] has the burden of showing by the preponderance of the evidence that his pleas were not understandingly or voluntarily made, and *must make strict showing with solid affirmative basis for the relief sought.'* (Emphasis added). *See also State v. Zold,* 105 N.J.Super. 194, 251 A.2d 475, 480 (1969), aff'd, 110 N.J.Super. 33, 264 A.2d 257 (1970).

In contrast, the New Jersey Supreme Court has interpreted the rule authorizing a change or reduction in sentence 'to sanction reconsidered leniency,' *State v. Matlack,* 49 N.J. 491, 231 A.2d 369, 374 (N.J.), *cert. denied,* 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967), and in granting certification to suspend a custodial sentence of a defendant, the court has used as its standard for making that determination whether 'the ends of justice will best be met' by the suspension. *State v. Tumminello,* 70 N.J. 187, 358 A.2d 769, 772 (1976). . . . 607 F.2d at 36.

The State court proceedings did not constitute a meaningful sentence reduction hearing for a number of reasons:

*First*: Bifurcating the hearing was inconsistent with the procedures and purposes of Rule 3:21–10. If the sentencing judge is to exercise his discretion properly he must have before him all of the facts. These facts, in their entirety, must be taken into account when he arrives at a determination.

When the State court denied Tully's application on December 18, 1979, he considered only the disparity of sentences, proceeding on the express assumption that there had been no violation of a plea bargain agreement. When it denied the application on January 21, 1980 it was considering only the alleged violation of the plea bargain agreement. Both factors should have been considered together as part of the totality of circumstances upon the basis of which the Court would exercise its discretion. That was the procedure Judge McGann was pursuing when the hearing before him was terminated in 1976.

*Second*: Tully was denied a meaningful hearing by the failure of the State court to receive testimony and other evidence at the January 21, 1980 hearing. Simply assuming the truth of Tully's contention that the State had violated a plea agreement was insufficient. To have intelligently exercised its discretion, the State court would have to have known the details of the negotiations between Tully and the State and the circumstances which prevailed when those negotiations were taking place.

It is quite possible that the facts would have disclosed that there was no agreement which was enforceable against the State, *cf., Virgin Islands v. Scotland,* 614 F.2d 360 (3d Cir. 1980). However, the circumstances might have been such that the Court, using its discretionary powers, might have concluded that some relief from the original sentence was warranted. Having nothing before it but a bare assumption, the State court was not in a position to exercise its discretion. In these circumstances an assumption is not a substitute for well developed factual data.

*Third*: If, in fact, the State broke its agreement with Tully, as Tully alleges, it is inconceivable that the sentencing judge would not have modified the sentence he imposed. This was clearly implicit in the fact that Judge McGann decided to hold evidentiary hearings to determine if the State had violated a plea agreement. He would not have ordered such hearings if, as the State court has now decided, it makes no difference in a sentence reduction hearing if it is established that the State has violated a solemn agreement it made with the defendant.

█ It is true that frequently the appropriate remedy when the State violates a plea agreement is to vacate a defendant's guilty plea and to permit him to stand trial, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, when a defendant has changed his position irretrievably by reason of the guilty plea entered pursuant to a plea agreement which the State fails to observe, he is entitled to enforce the agreement. This course

of action is mandated by the United States Constitution, *e. g., Cohen v. United States,* 593 F.2d 766 (6th Cir. 1979); *Petition of Geisser,* 554 F.2d 698 (5th Cir. 1977); *Correale v. United States,* 479 F.2d 944 (1st Cir. 1973); *United States v. Shanahan,* 574 F.2d 1228 (5th Cir. 1978). The rule is no different under New Jersey law, *State v. Thomas,* 61 N.J. 314, 294 A.2d 57 (1972).

In the present case, whether one looks at the facts as they existed in May, 1976, when Judge McGann was prepared to resume the sentence reduction hearing, or in January, 1980, when the State court heard argument on the matter, Tully had irretrievably changed his position in reliance upon the plea agreement which the State court assumed to have been made by the State. In the present case, the moment Tully agreed to cooperate with the State his position changed forever. From that moment he had cut himself off from his former associates in crime and had become a target for their vengeance. That situation could not be altered by a retraction of the plea and the opportunity to stand trial. It existed in May, 1976 and it continued to exist in January, 1980. Further, by January, 1980 Tully had already served far more than his agreed upon New Jersey sentence, and the existence of the actual sentence which the trial court assumed to be illegal was interfering with his opportunities for parole, and perhaps other benefits, while serving his federal sentence.

If Tully's contentions are accepted as true, a position we must accept by reason of the assumption made by the State court, it would be an abuse of discretion in a Rule 3:21–10 proceeding for a State court to fail to reduce Tully's sentence to that to which the State agreed. Since the State court did fail to reduce the sentence when it was constitutionally mandated that it do so, the hearing was not meaningful.

*Fourth*: If I understand the Court of Appeals' opinion in this matter correctly, the course of action which the State court pursued was one which the Court of Appeals specifically held was inadequate.

The State argued before the Court of Appeals that Tully had not been injured by

the termination of his sentence reduction hearing "because he had available a post-conviction remedy at the state level". 607 F.2d at 35. The Court of Appeals disagreed with that because "[a] sentence reduction hearing affording the Court such broad discretion appears to us to be substantially different from a post-conviction proceeding in which a defendant must establish a clear right to relief". 607 F.2d at 36. Thus it seems clear to me that the Court of Appeals ruled that Tully must be given the opportunity to present both the disparate sentences and the State's violation of a plea agreement in a sentence reduction hearing as was being done at the hearing before Judge McGann.

The effect of what the State court did on January 21, 1980 was to require Tully to seek relief in a post-conviction relief proceeding under Rule 3:22. This was accomplished by stating that assuming the violation of a plea agreement, the court would not exercise its discretion under Rule 3:21–10 to reduce the sentence, but that "I am willing to convert the present proceeding *sua sponte* or on motion of the defendant to a proceeding for post-conviction relief or to a proceeding for vacation of the pleas of guilty and non vult and to conduct an evidentiary hearing forthwith; and if the defendant establishes the existence of such an agreement as he contends, to vacate the conviction". (Tr., Jan. 21, 1980 at 45.) As noted above, the remedy which the State court proposed to give in a post-conviction relief proceeding (vacation of the plea and an opportunity to stand trial) was constitutionally inadequate, and the procedure it proposed had been rejected by the Court of Appeals.

It is hard to understand the role played in the State court proceeding by the attorneys for the State. Surely they comprehended what the Court of Appeals required. The State court to which the matter was assigned was extraordinarily busy. It had difficulty scheduling one day for a hearing, let alone the required two weeks (Tr., Dec. 18, 1979, at 71–75). The State's attorneys did not assist in explaining to the State court what had to be done. In fact, their actions served to confuse the State court.

By moving to dismiss Tully's sentence reduction application under Rule 3:21–10 and to relegate him to a post-conviction relief proceeding under Rule 3:22, they were urging the State court to do precisely what they had been told by the Court of Appeals could not be done. It is evident that the State's attorneys succeeded in implanting an incorrect notion of the nature of the proceedings in the mind of the State court, because, as noted above, the State court commenced the January 21, 1980 hearing under the erroneous impression that Tully was attacking the legality of the conviction rather than his sentence. (Tr., Jan. 21, 1980, at 17.) It would appear that this misconception was never completely dispelled, because the action taken by the State court was, in substance, the action requested by the State's attorneys in their motion. As a consequence, the January 21, 1980 proceeding did not constitute a meaningful sentence reduction hearing as contemplated by the Court of Appeals.

### CONCLUSION

The State court having failed to afford Tully a meaningful sentence reduction hearing within a reasonable time, his motion for the issuance of a writ of habeas corpus will be granted.