637 F.2d 917
 John Patrick TULLY
v.
Edward SCHEU, United States Marshal for the District of New
Jersey, and William F. Hyland, Attorney General of
New Jersey.
Appeal of John J. DEGNAN, Attorney General of the State of
New Jersey, on behalf of the State of New Jersey.
 No. 80-1691.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 4, 1980.
Decided Dec. 30, 1980.
 
 John J. Degnan, Atty. Gen. of New Jersey, Trenton, N. J., for appellant; Rocky L. Peterson (argued), Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Princeton, N. J., on brief; Robert E. Rochford, Deputy Atty. Gen., Princeton, N. J., of counsel.
 Richard A. Sprague, Pamela W. Higgins, Steve Alexander (argued), Sprague, Goldberg & Rubenstone, Philadelphia, Pa., Donald I. Bryan, Mount Holly, N. J., for appellee.
 Before SEITZ, Chief Judge, and HUNTER and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 The state of New Jersey appeals from an order of the district court granting John Patrick Tully's petition for a writ of habeas corpus and releasing him from state custody.
 
 I.
 
 2
 On January 7, 1975, Tully plead guilty to various criminal charges, including five murders, conspiracy and armed robbery, before the Honorable W. Thomas McGann, then a judge of the Superior Court of New Jersey. Judge McGann was informed that Tully had entered into a plea agreement with the state that provided for a maximum sentence of twenty years to run concurrently with any federal sentence that Tully might receive. Tully had agreed to testify against his codefendants at trial. Before Tully was sentenced, his codefendants negotiated guilty pleas with the state. Judge McGann accepted these pleas and imposed the short prison sentences recommended by the state, which varied from three to twelve years. However, one codefendant received a twenty-five-year sentence, which was concurrent with a longer federal sentence.
 
 
 3
 On July 30, 1975, Judge McGann sentenced Tully to an aggregate term of twelve to fifteen years to run concurrently with a federal sentence of twelve years imposed the previous day on unrelated charges. On August 8, 1975, Tully filed a timely motion for a reduction of sentence pursuant to N.J.Ct.Rule 3:21-10. Thereafter, Tully raised the contention that the state had breached an alleged secret plea bargain agreement. Tully understood the terms of this alleged bargain to be: (1) Tully would receive a shorter sentence than any of his codefendants; (2) to maintain credibility as a state witness, the reported terms of the bargain must include a substantial number of years; (3) if one of the codefendants was convicted at trial, he certainly would receive consecutive life sentences; (4) the state would not accept a guilty plea for a term less than twenty years from any of the codefendants; and (5) therefore, Tully's agreement to a maximum of twenty years would mean that his sentence would be less than that of any of his codefendants.
 
 
 4
 The history of Tully's sentence reduction motion is set forth in a prior opinion of this court, see Tully v. Scheu, 607 F.2d 31 (3d Cir. 1979) (Tully I ), and need not be detailed here. In essence, Judge McGann continued the hearing to a date well beyond the time limit prescribed by rule 3:21-10 for disposition of sentence reduction motions because Tully needed to acquire substitute counsel when it became apparent that his counsel would be required to testify concerning the alleged secret agreement. Judge McGann denied the state's motion to dismiss the proceeding, which was based on the time-limitation violation, but this decision was reversed by the Appellate Division of the Superior Court of New Jersey. See State v. Tully, 148 N.J.Super. 558, 372 A.2d 1323 (App.Div.), certif. denied, 75 N.J. 9, 379 A.2d 240 (1977).
 
 
 5
 Tully filed a petition for a writ of habeas corpus in federal district court, alleging that the denial of the opportunity to proceed with the sentence reduction hearing violated his sixth and fourteenth amendment rights. The district court denied the petition. On appeal, this court reversed the decision of the district court, holding that the New Jersey appellate division had interfered with Tully's "constitutional right to counsel at the sentence reduction hearing," and ordered that the writ of habeas corpus should issue "unless the State of New Jersey affords (Tully) a meaningful sentence reduction hearing within a reasonable time. " Tully I, 607 F.2d at 36 (emphasis added).
 
 
 6
 The state then scheduled Tully's sentence reduction hearing for December 18, 1979. Judge Lenox was to preside over this hearing because Judge McGann had retired. Two weeks before the scheduled date of this hearing, Tully filed in federal district court a motion for an order granting his application for a writ of habeas corpus and further requesting a stay of the state proceedings. This motion alleged that no meaningful hearing could be had before any judge other than Judge McGann; it was denied by the district court because the state should at least be given an opportunity to first conduct a meaningful hearing. Tully then moved in the state court to have Judge McGann recalled from retirement to preside over the hearing as authorized by N.J.Stat.Ann. § 43:6A-13(b) (West 1980 Cum.Supp.). The Chief Justice of the Supreme Court of New Jersey denied this motion because Judge McGann had entered into the practice of law and had become active in politics since his retirement, both of which made his recall inappropriate.
 
 
 7
 At the December 18 hearing, Tully's counsel asserted that several factors should compel Judge Lenox, in the exercise of his discretion, to reduce Tully's sentence. These factors included: (1) the disparity between his sentence and the more lenient sentences of his codefendants; (2) the unduly burdensome nature of his extended confinement, which was required to protect him from retaliation by his codefendants; (3) the state's withdrawal of its earlier nonopposition to a limited reduction of his sentence; (4) the unreported terms of his alleged secret plea bargain with the state; (5) his justifiable and irremediable detrimental reliance upon those terms; and (6) the breach of those terms when he was sentenced.
 
 
 8
 Judge Lenox bifurcated the sentence reduction hearing. He considered on December 18 those factors that he believed were addressed to his discretion, i. e., the disparity of the sentences and the burdensome nature of Tully's confinement. He assumed for purposes of this hearing that Tully had been validly convicted pursuant to the reported plea agreement. After extensive argument by Tully's counsel, Judge Lenox refused to reduce Tully's sentence based on these factors because Tully had not shown a grievous inequity that would tend to destroy either Tully's sense of having been treated justly or public confidence in even-handed justice. Judge Lenox set the secret-agreement claim for hearing on January 21.
 
 
 9
 The state then moved to dismiss the motion to reduce sentence on the grounds that the December 18 proceeding constituted the meaningful sentence reduction hearing required by Tully I, and that a postconviction relief proceeding under N.J.Ct.Rule 3:22, not a sentence reduction hearing, was the proper vehicle for hearing evidence on the validity of a guilty plea. After Tully's counsel persuaded Judge Lenox that Tully was not attacking the validity of his conviction because of the alleged breach, but was asking only that the alleged violation be considered in deciding whether to reduce the length of his sentence under rule 3:21-10, the judge denied the state's motion to dismiss the January 21 proceeding.
 
 
 10
 To avoid a protracted hearing, the judge assumed for purposes of the sentence reduction hearing only that the state had made and breached the alleged secret agreement. Judge Lenox made it clear that he was only considering this alleged secret plea agreement to the extent it was relevant to his discretion to reduce sentence under rule 3:21-10. Judge Lenox then ruled that he could not, in the exercise of his discretion to reduce sentence under rule 3:21-10, modify Tully's sentence to conform to the alleged secret agreement because the sentence that had been imposed was extremely lenient. He stated that he could not, under any circumstances, impose a sentence of less than three years for these heinous crimes, and that he did not think that any judge, including Judge McGann, would do so.
 
 
 11
 Furthermore, before he ruled that he would not reduce Tully's sentence, Judge Lenox ruled that under New Jersey law the legality of the conviction could not be attacked in a sentence reduction hearing, but that Tully could proceed under rule 3:22 to prove his claim that a secret plea agreement had been made and breached. However, Tully declined Judge Lenox's sua sponte offer to convert the hearing into either a postconviction relief proceeding under rule 3:22, or a proceeding to vacate the pleas, and to conduct a full evidentiary hearing on Tully's claim.
 
 
 12
 Tully then moved in the district court for an order granting his application for a writ of habeas corpus because the sentence reduction hearing was not "meaningful" within the meaning of Tully I. The district court ordered that the writ should issue. See Tully v. Scheu, 487 F.Supp. 404 (D.N.J.1980). At the outset, it rejected the claim that a meaningful hearing could be held only before Judge McGann, and held that Tully's motion to recall Judge McGann had been denied for sound reasons. However, the court found that the sentence reduction hearing was not meaningful for four reasons: 1) Bifurcation of the hearing prevented Judge Lenox from properly exercising his discretion because he should have considered all the factors simultaneously; 2) by assuming the truth of Tully's allegation that a secret agreement had been breached, Judge Lenox denied Tully the opportunity to prove this claim and also prevented an intelligent exercise of his discretion; 3) if the state breached the agreement, as Tully alleged, it was "inconceivable that the sentencing judge would not have modified the sentence he imposed;" and 4) Tully I mandated that Tully be allowed to present his claim that the state violated the plea agreement at a sentence reduction hearing. See id. at 410-12. The district court also held that under the circumstances of this case, vacating the plea would be a constitutionally inadequate remedy because Tully, by alienating his former associates and becoming a target for their revenge, had irretrievably changed his position in reliance on the plea bargain. Therefore, the district court ordered that the writ of habeas corpus should issue.
 
 II.
 
 13
 Ordinarily, a prisoner must exhaust available state remedies before pursuing a writ of habeas corpus in federal court. See, e. g., United States ex rel. Johnson v. Cavel, 468 F.2d 304 (3d Cir. 1972) (in banc). However, in this case, the court in Tully I ordered that the writ should issue unless the state gave Tully a meaningful hearing within a reasonable time. Tully is now asserting that the writ conditionally granted in Tully I should issue because the state did not comply with this court's mandate. Therefore, Tully was not required to appeal Judge Lenox's interpretation of New Jersey law within the state court system before seeking the issuance of the writ conditionally granted in Tully I.
 
 
 14
 Given that Tully chose not to appeal within the state court system Judge Lenox's interpretation that a proceeding under rule 3:22, not rule 3:21-10, was the proper forum in which to conduct a full evidentiary hearing on the constitutionality of a guilty plea, we do not know whether this interpretation would be upheld if appealed to higher state courts. However, it is not within our province to decide the correctness of this state-law determination where there is no indication that this interpretation was a mere sham. We only examine the state hearing to determine whether it was meaningful within the mandate of Tully I, and we will assume for purposes of this appeal only that Judge Lenox's interpretation was correct. However, if Tully has preserved his right to appeal Judge Lenox's decision within the state system, nothing we say in this opinion should be taken as deciding the propriety of Judge Lenox's interpretation of state law.[1]
 
 
 15
 At the outset, the district court found that the state had not deprived Tully of a meaningful hearing merely because it refused to recall Judge McGann to preside over the hearing. Tully asserts on appeal that this finding was erroneous. We agree with the district court that the state refused to recall Judge McGann for sound reasons, and we do not believe that the Tully I court intended to require that a particular judge preside over the hearing.
 
 
 16
 However, the district court found that the hearing was not meaningful within the mandate of Tully I for other reasons. It interpreted Tully I not only as requiring that the state afford Tully the opportunity to have a meaningful sentence reduction hearing under New Jersey law, but also as dictating the claims that must be heard in that hearing. In essence, the district court interpreted Tully I as both declaring unconstitutional the procedures established by New Jersey for deciding claims such as Tully's, and as compelling the state to utilize its postconviction relief remedies at a sentence reduction hearing under rule 3:21-10. We begin our review of the district court's decision by examining the opinion in Tully I.
 
 
 17
 In Tully I, this court interpreted Tully's petition as claiming state interference with his constitutional right to counsel by depriving him of the opportunity to proceed with the sentence reduction hearing when the time limitation of rule 3:21-10 had been exceeded only because Tully needed to obtain substitute counsel. The Tully I court noted that, in denying Tully's petition for a writ of habeas corpus, the district court had accepted the state's argument that Tully failed to exhaust state remedies by not pursuing postconviction relief under rule 3:22. The district court had treated Tully's petition as alleging that his guilty plea was involuntary because the state had breached the secret plea bargain. On appeal, this court rejected this interpretation of Tully's petition, noting that "(a)lthough the (guilty plea) contention may have been raised below, appellant's principal argument there, as here, was that the denial of the opportunity to proceed with the sentence reduction hearing was the constitutional deprivation." Tully I, 607 F.2d at 33. Because it specifically rejected the district court's interpretation of Tully's petition as an attack on the validity of his guilty plea, we do not believe that Tully I can be read to announce that Tully had a constitutional right to attack the legality of his plea in a sentence reduction hearing under rule 3:21-10 as opposed to a postconviction relief proceeding under rule 3:22.
 
 
 18
 Nor do we believe that the discussion of rules 3:21-10 and 3:22 in Tully I can be interpreted as defining which claims the state must hear in a proceeding under rule 3:21-10. The Tully I court discussed these rules when it rejected the state's argument that Tully had not exhausted available state remedies because he failed to avail himself of postconviction relief under rule 3:22. See 607 F.2d at 36. In rejecting this argument, the Tully I court found significant that the burden of proof in a postconviction relief proceeding under rule 3:22 is different from that in a sentence reduction hearing under rule 3:21-10. Compare State v. Kramer, 98 N.J.Super. 539, 237 A.2d 907, 909-10 (Law Div.1967) (in postconviction relief proceeding, defendant must show by "preponderance of the evidence that his pleas were not understandingly and voluntarily made and must make strict showing with a solid affirmative basis for the relief sought") with State v. Matlack, 49 N.J. 491, 231 A.2d 369, 374, cert. denied, 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967) (in sentence reduction hearing, the state court employs its "reconsidered leniency").
 
 
 19
 However, the Tully I court found this difference significant only in the context of rejecting the state's exhaustion argument. We do not believe that it intended to imply that the state must decide Tully's attack on his guilty plea under the more lenient standard of rule 3:21-10. The fact that Tully still had the opportunity under rule 3:22 to present his claim that the state had breached its plea bargain did not alter the Tully I court's conclusion that the state had interfered with Tully's constitutional right to counsel by denying him the opportunity to present his motion to reduce sentence under the more lenient standard of rule 3:21-10. See 607 F.2d at 36. We conclude that Tully I required only that the state afford Tully the opportunity, after he obtained substitute counsel, to present those claims that are cognizable under New Jersey law in a sentence reduction hearing under rule 3:21-10. Therefore, the district court erred to the extent it interpreted Tully I as requiring the state to utilize the sentence reduction procedure of rule 3:21-10 to adjudicate Tully's claim that the state had breached its plea bargain.
 
 
 20
 Having found the district court's interpretation of Tully I unacceptable, we now consider its reasons for finding that the sentence reduction hearing was not meaningful. First, the district court found that the state denied Tully a meaningful hearing by: (a) bifurcating the hearing to separate those claims that related to the alleged secret plea agreement from those that were properly addressed to Judge Lenox's discretion to reduce sentence under rule 3:21-10, and (b) assuming the truth of Tully's allegation that a secret agreement had been made and breached. We disagree with these findings because they are premised on the district court's erroneous interpretation of Tully I, and they do not constitute a deprivation of the meaningful hearing required by Tully I as we interpret that opinion.
 
 
 21
 Second, the district court found that the state court abused its discretion under rule 3:21-10 by not reducing Tully's sentence to three years once it assumed that the state had breached the alleged secret agreement. In reaching this conclusion, the district court seemed to rely substantially on its finding that vacating the plea would be a constitutionally inadequate remedy under the circumstances of this case. We believe that this conclusion is also based on the district court's erroneous belief that Tully I required the state to give Tully a full hearing on his secret plea bargain claim in the sentence reduction hearing. The district court believed that, once Judge Lenox assumed that the secret agreement had been made and breached, he had no discretion to refuse to enforce that agreement. However, Judge Lenox only considered the alleged breach to the extent it was addressed to his discretion to reduce sentence under rule 3:21-10, and the reasons he gave for not reducing Tully's sentence were valid under that rule. Cf. State v. Pickell, 136 N.J.Super. 340, 346 A.2d 109 (App.Div.1975) (sentencing judge must seek justice to society as well as justice to individual).
 
 
 22
 Moreover, had Tully desired a full evidentiary hearing in which to prove this claim, he had two options: Judge Lenox offered to convert the sentence reduction proceeding into either a proceeding for postconviction relief under rule 3:22, in which the plea could be vacated or the agreement specifically enforced, or a proceeding for vacation of the guilty or non vult pleas. The state thus has provided a procedure by which Tully can attack the validity of his conviction based on the state's breach of the alleged secret plea bargain; if Tully proves this claim, the state court has the authority in a rule 3:22 proceeding to provide either of the remedies suggested in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for such claims. Judge Lenox denied Tully's motion for reasons permissible under rule 3:21-10; moreover, he offered Tully the opportunity to prove that the state had breached its agreement in proceedings appropriate under New Jersey law to adjudicate such a claim. Therefore, we conclude that his decision not to reduce Tully's sentence to conform to the agreement, which he assumed to have existed as Tully asserted for purposes of the sentence reduction hearing only, did not deprive Tully of a meaningful sentence reduction hearing within the meaning of Tully I.[2]
 
 
 23
 Further, we conclude that, given the state of the record on the alleged breach of the plea bargain, the district court's finding that vacating the plea would be a constitutionally inadequate remedy was premature. If Tully later pursues postconviction relief under New Jersey law, and proves that the state in fact breached its plea bargain agreement, the state court should decide in the first instance the remedy to which he is entitled. See, e. g., Patrick v. Camden County Prosecutor, 630 F.2d 206 (3d Cir. 1980).
 
 III.
 
 24
 In conclusion, we find that the mandate of this court in Tully I was that the state afford Tully, after he obtained substitute counsel, the opportunity to present in a sentence reduction hearing under rule 3:21-10 those claims cognizable under New Jersey law in such a proceeding. Further, we find that Judge Lenox fully considered in the December 18 proceeding the claims that he held were cognizable under rule 3:21-10. Finally, we conclude that Judge Lenox's decisions to bifurcate the proceeding, to assume the truth of Tully's allegations, and not to reduce Tully's sentence in the sentence reduction hearing, were based on his interpretation of the nature of the claims that could be presented in a rule 3:21-10 proceeding, and did not deprive Tully of a meaningful sentence reduction hearing within the meaning of Tully I.
 
 IV.
 
 25
 The order of the district court will be reversed.
 
 
 
 [1]
 Nor is it within our province to decide the correctness of Judge Lenox's determination that the claim that a plea agreement has been breached is cognizable in a rule 3:21-10 proceeding when it is addressed only to the state court's discretion to reduce sentence under that rule. We also leave this question to the state court system
 
 
 [2]
 Having determined that Tully had a meaningful sentence reduction hearing within the Tully I mandate, any substantive error committed in that proceeding that might properly be asserted by Tully in a subsequent section 2254 habeas action, would obviously require exhaustion of available state remedies before a federal court could entertain such a claim